NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2019 IL App (4th) 190540-U

NOS. 4-19-0540, 4-19-0541 cons.

FILED
December 18, 2019
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* D.W., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Macon County |
| Petitioner-Appellee, | ) | No. 16JA70 |
| v. (No. 4-19-0540) | ) | |
| D'Angelo W., | ) | |
| Respondent-Appellant). | ) | |
| | ) | |
| --------------------------------------------------------------------- | ) | |
| *In re* H.W., a Minor | ) | No. 16JA71 |
| | ) | |
| (The People of the State of Illinois, | ) | |
| Petitioner-Appellee, | ) | |
| v. (No. 4-19-0541) | ) | Honorable |
| D'Angelo W., | ) | Thomas E. Little, |
| Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Steigmann and Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed, concluding the trial court's findings respondent was an unfit parent and it was in the minors' best interests to terminate his parental rights were not against the manifest weight of the evidence.

¶ 2   Respondent father, D'Angelo W., appeals from the trial court's orders terminating his parental rights to D.W. (born August 12, 2014) and H.W. (born July 8, 2013). On appeal, respondent argues the trial court's findings he was an unfit parent and it was in the minors' best interests to terminate his parental rights were against the manifest weight of the evidence. We disagree and affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Respondent and Julie D. are the minors' biological parents. Julie D.'s parental rights to the minors were terminated in January 2018, and she is not a party to this appeal.

¶ 5                          A. Motions to Terminate Parental Rights

¶ 6        In May 2019, the State filed motions to terminate respondent's parental rights to the minors. In its motions, the State alleged respondent was an unfit parent as he (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2018)); (2) failed to make reasonable efforts to correct the conditions that were the basis for the removal of the minors during any nine-month period following adjudications of neglected (750 ILCS 50/1(D)(m)(i) (West 2018)); and (3) failed to make reasonable progress toward the return of the minors to his care within any nine-month period following adjudications of neglected, namely June 29, 2016, to March 29, 2017, March 29, 2017, to December 29, 2017, December 29, 2017, to September 29, 2018, and July 29, 2018, to April 29, 2019 (750 ILCS 50/1(D)(m)(ii) (West 2018)). The State further alleged it was in the minors' best interests to terminate respondent's parental rights and appoint the Department of Children and Family Services (DCFS) as guardian with the power to consent to adoption.

¶ 7                                  B. Fitness Hearing

¶ 8        In July 2019, the trial court held a fitness hearing. Respondent appeared 25 minutes after the hearing commenced.

¶ 9        Lindsay Horcharik, a DCFS child welfare specialist, testified she had been the minors' caseworkers since the minors came into DCFS care in May 2016. The minors came into care due to their mother's activities. After the minors came into care, respondent completed an

integrated assessment. The assessment recommended a substance-abuse assessment and drug screens because respondent had received two, back-to-back "DUI" convictions. The assessment also recommended obtaining steady housing and employment.

¶ 10 In November 2016, respondent's progress was assessed. Respondent had completed a substance-abuse assessment and was employed. Respondent's housing was "[s]emi-stable." He resided between the home of the minors' mother and his mother's home. Respondent failed to complete randomized drug screens. He also had not begun his drug and alcohol treatment hours for his DUI convictions. Respondent's overall rating was unsatisfactory.

¶ 11 In May 2017, respondent was again rated on his services. Respondent had been residing primarily with the minors' mother; however, in April 2017, he and the minors' mother ended their relationship. Respondent was employed. At one point, he quit his job and was then later hired by another company with third-party assistance. He later quit that job because he did not care for the work or the people he worked with. Respondent completed his drug and alcohol treatment hours for his DUI convictions. He participated in randomized drug screens. He tested positive for marijuana and "K-2" on November 30 and December 7, 2016. During a team meeting, defendant admitted to "relapsing." He also admitted to continued alcohol use. Respondent's overall rating was unsatisfactory.

¶ 12 In November 2017, respondent's progress was assessed. Respondent resided with his mother. Respondent attended randomized drug screens. He tested positive for alcohol on October 26, 2017, and later admitted to continued alcohol use despite being prohibited as part of his sentence. Horcharik recalled "a couple of occasions" where respondent appeared at team meetings smelling of alcohol. During one of the meetings, defendant admitted he had been partying

the night before. Respondent's overall rating was unsatisfactory.

¶ 13    In April 2018, respondent was again rated on his service plan. Since December 2017, respondent had been living in his own apartment, which he obtained with the assistance of the Youth Advocate Program. The apartment was clean, and he was working on getting it furnished. Respondent was employed. He largely attended randomized drug screens. Respondent failed to appear on February 27 and April 12, 2018. He tested positive for alcohol on February 28, March 5, and April 3, 2018. He tested positive for cocaine on March 20, 2018. Respondent, despite rating unsatisfactory on his substance-abuse progress, rated overall satisfactory. While his overall rating was satisfactory, Horcharik did not believe it was safe and in the minors' best interest to return them to his custody at that time due to his ongoing substance-abuse issues and him failing to take those issues seriously.

¶ 14    In October 2018, respondent's progress was assessed. He attended randomized drug screens. He tested positive for alcohol on May 2, May 16, May 31, and June 7, 2018. He also tested positive for marijuana on July 31, 2018. Respondent's overall rating was satisfactory. While his overall rating was satisfactory, Horcharik still did not believe it was safe and in the minors' best interest to return them to his custody at that time. She did, however, increase visitation in October 2018 and allowed two, day-long monitored visits, both of which went well.

¶ 15    In April 2019, respondent was rated on his service plan. While respondent maintained his apartment, he was no longer employed and lied to both DCFS and Youth Advocate about his unemployment for approximately 30 days. He tested positive for alcohol on November 20 and December 27, 2018. He failed to attend drug screens on January 24, January 29, February 25, and March 25, 2019. In November 2018, respondent's attendance at visitation became

inconsistent. He had no-show, no-calls on November 3, November 4, November 11, November 17, November 18, December 22, December 29, and December 30. The November 17 and 18, 2018, visitations were to be respondent's first overnight with the minors. Respondent primarily missed visits on weekends. Respondent reported he missed some visits because his phone was off. Horcharik indicated she had several issues throughout her involvement with contacting respondent due to his lack of minutes on his cell phone and his need to be around Wi-Fi in order to receive calls and texts. Respondent also reported he missed visits because he overslept. Respondent indicated he had several deaths in his family around the time he missed the visits. DCFS repeatedly addressed with respondent the need for him to attend visitations or call before any absences, to which respondent indicated he understood. Respondent's inconsistent attendance resulted in visitations being decreased in April 2019. Respondent's overall rating was unsatisfactory.

¶ 16        When asked if she believed the minors could be placed with respondent within the next six to nine months, Horcharik testified, "I can't say that would be likely." Horcharik acknowledged respondent's attendance at visitation had improved after the number of visitations were decreased in April 2019. Horcharik testified she addressed respondent's drug use multiple times with him and he would always report he did not have a substance-abuse problem and, therefore, she did not recommend additional substance-abuse treatment.

¶ 17        Laurinda Mitchell, a visitation specialist at Youth Advocate, testified she received the minors' case in June 2017. Since that time, respondent had been authorized to attend 243 visits with the minors. Of those visits, he missed approximately 100. He missed most visits between November 2018 and April 2019. Mitchell emphasized to respondent the need to attend visits, her willingness to accommodate his work schedule, and the need for him to call her if he was going to

miss a visit. Respondent failed to call before missing many of the visits. When respondent attended the visits, he interacted well with the minors but struggled with providing for them financially. Mitchell did not have any concerns with respondent's interactions with the minors. Mitchell's primary concern, which she expressed to respondent, was his lack of responsibility when it came to attending visits and calling when he could not attend a visit.

¶ 18 Amanda Aubert, a housing advocate at Youth Advocate, testified she received the minors' case in May 2017. She assisted respondent with obtaining public aid, including housing and its furnishings. She also assisted respondent with employment searches and obtaining a restricted driver's license. Respondent obtained housing through a public aid program. Aubert testified respondent's apartment was generally clean and the minors' rooms were well decorated and filled with plenty of toys. Respondent, however, had compliance issues with the housing services. Respondent failed to consistently attend meetings with Aubert. Respondent turned off the power to his apartment for a three-day period in violation of the rules for public housing. Respondent failed to report he was unemployed in May 2018 and then again in April 2019.

¶ 19 Christine Foster, a parenting educator at Youth Advocate, testified she received the minors' case around May 2017. In August 2017, Foster administered a parenting assessment to respondent, which resulted in a showing of "medium risk" and a recommendation for parenting classes. Foster believed most parents referred to her rated "medium risk" before taking a parenting class. Respondent completed a parenting class, as well as another curriculum. He was reevaluated and still rated "medium risk." Given that rating, further parenting instruction was recommended. Respondent reengaged in services in January 2018, but his attendance decreased around November or December 2018. Sometime in 2019, respondent reached out and they held a team meeting,

where respondent indicated he had several deaths in his family causing him to spend a lot of time in Chicago. Respondent did not reengage in additional parenting classes.

¶ 20 Based on this evidence, the trial court found respondent was an unfit parent for all the reasons alleged in the State's motions to terminate respondent's parental rights.

¶ 21 C. Best-Interest Hearing

¶ 22 In August 2019, the trial court held a best intertest hearing. The court received a best-interest report and heard testimony from Horcharik.

¶ 23 The minors had been in a traditional licensed foster placement since May 9, 2016. The minors were bonded to their foster parents, who expressed a desire to adopt. The foster parents provided for the minors' needs. The minors were involved in extra-curricular activities, such as swimming and dance. The foster parents had a large extended family, to which the minors were bonded. The minors attended counseling. D.W. initially had issues with aggressive behaviors but those behaviors had decreased. The minors were bonded to respondent and visits with him went well. Respondent struggled with being a full-time parent. Horcharik believed the foster parents could provide the minors with the permanency they needed. Horcharik testified it was the position of DCFS it would be in the minors' best interests to terminate respondent's parental rights.

¶ 24 Based on this evidence, the trial court, after considering the statutory best-interest factors found in section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1-3(4.05) (West 2018)), found it would be in the minors' best interests to terminate respondent's parental rights. The court entered written orders terminating respondent's parental rights to each minor.

¶ 25 This appeal followed.

¶ 26 II. ANALYSIS

¶ 27	On appeal, respondent argues the trial court's findings he was an unfit parent and it was in the minors' best interests to terminate his parental rights were against the manifest weight of the evidence.

¶ 28	A. Unfitness Finding

¶ 29	Respondent asserts the trial court's finding he was an unfit parent was against the manifest weight of the evidence. The State disagrees.

¶ 30	In a proceeding to terminate parental rights, the State must prove unfitness by clear and convincing evidence. *In re Donald A.G.*, 221 Ill. 2d 234, 244, 850 N.E.2d 172, 177-78 (2006). A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re Gwynne P.*, 215 Ill. 2d 340, 354, 830 N.E.2d 508, 516-17 (2005). "A court's decision regarding a parent's fitness is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent." (Internal quotation marks omitted.) *In re M.I.*, 2016 IL 120232, ¶ 21, 77 N.E.3d 69.

¶ 31	The trial court found respondent was an unfit parent as defined in section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2018)). Section 1(D)(m)(ii) provides, in part, a parent will be considered an "unfit person" if he or she fails "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of neglected ***." *Id.*

¶ 32	"Reasonable progress" has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re C.N.*, 196 Ill. 2d 181, 211, 752 N.E.2d 1030, 1047 (2001). This is an objective standard. *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88, 19 N.E.3d 227. The benchmark for measuring a parent's progress toward reunification

"encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *C.N.*, 196 Ill. 2d at 216-17.

¶ 33　　　　In determining a parent's fitness based on reasonable progress, a court may only consider evidence from the relevant time period. *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046, 871 N.E.2d 835, 844 (2007). Courts are limited to that period "because reliance upon evidence of any subsequent time period could improperly allow a parent to circumvent her own unfitness because of a bureaucratic delay in bringing her case to trial." *Id.* at 1046.

¶ 34　　　　In this case, a relevant time period was July 29, 2018, to April 29, 2019. During this period, respondent (1) lost his employment and lied to both DCFS and Youth Advocate about his unemployment for approximately 30 days, (2) tested positive for marijuana on one occasion and alcohol on several occasions, (3) failed to attend all drug screens, (4) failed to complete parenting classes, and (5) had multiple no-show, no calls for visitations with the minors, including the first scheduled overnight with the minors. Respondent's actions and lack of responsibility ultimately resulted in visitations with the minors being decreased. The minors' caseworker believed it would be unlikely the minors could be placed with respondent within the next six to nine months. Based on this evidence, we find the trial court's unfitness finding is not against the manifest weight of the evidence.

¶ 35　　　　As only one ground for a finding of unfitness is necessary to uphold the trial court's judgment, we need not review the other basis for the court's unfitness finding. See *In re Tiffany M.*, 353 Ill. App. 3d 883, 891, 819 N.E.2d 813, 820 (2004).

¶ 36                                    B. Best-Interest Findings

¶ 37            Respondent asserts the trial court's findings it was in the minors' best interests to terminate his parental rights were against the manifest weight of the evidence. The State disagrees.

¶ 38            At the best-interest stage, a "parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364, 818 N.E.2d 1214, 1227 (2004). The State must prove by a preponderance of the evidence termination is in the child's best interests. *Id.* at 367. When considering whether termination of parental rights would be in a child's best interest, the trial court must consider several statutory factors within the context of the child's age and developmental needs. 705 ILCS 405/1-3(4.05) (West 2018).

¶ 39            This court will not reverse a trial court's finding termination of parental rights is in a child's best interests unless it is against the manifest weight of the evidence. *In re Anaya J.G.*, 403 Ill. App. 3d 875, 883, 932 N.E.2d 1192, 1199 (2010). Again, a finding is against the manifest weight of the evidence only if the facts clearly demonstrate the court should have reached the opposite conclusion. *Id.*

¶ 40            Respondent contends the trial court's findings are against the manifest weight of the evidence given the evidence showing he and the minors were bonded. As indicated above, the court was required to consider more than just the fact a bond existed between the minors and respondent. See 705 ILCS 405/1-3(4.05) (West 2018) (listing statutory factors to consider when determining whether termination of parental rights would be in a child's best interest). The evidence showed the minors' foster parents, as opposed to respondent, were able to provide the minors with permanency, stability, and continuity of relationships with parent figures. Based on

the evidence presented, we find the trial court's findings it was in the minors' best interests to terminate respondent's parental rights were not against the manifest weight of the evidence.

¶ 41                                      III. CONCLUSION

¶ 42            We affirm the trial court's judgment.

¶ 43            Affirmed.