Docket No. 100965.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

*In re* DONALD A.G., a Minor (The People of the State of Illinois,                Appellant, v. Tony Gaylord, Appellee).

*Opinion filed May 18, 2006.*

JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, McMorrow, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

**OPINION**

The circuit court of Vermilion County found respondent, Tony Gaylord, to be an unfit parent on the ground of depravity under section 1(D)(i) of the Adoption Act (750 ILCS 50/1(D)(i) (West 2002)). Respondent was found to be depraved because he was convicted of the offense of predatory criminal sexual assault of a child, in that he committed an act of sexual penetration with a child under the age of 13. See 720 ILCS 5/12–14.1(a)(1) (West 1998). The court subsequently terminated respondent's parental rights. Respondent appealed, and the appellate court reversed the finding of unfitness. 357 Ill. App. 3d 934. We granted the State's petition for leave to appeal, and now reverse the judgment of the appellate court.

## BACKGROUND

On July 16, 2003, respondent's paramour, Heather Miller, gave birth to their son, Donald A.G. The record demonstrates that at the time of Donald's birth, respondent was in custody pending trial for the offense of predatory criminal sexual assault of a child. Respondent was alleged to have committed an act of sexual penetration against D.B., who was five years old at the time the act was committed. Respondent was ultimately convicted and sentenced to 20 years' imprisonment.

On January 28, 2004, the State filed a petition for adjudication of wardship alleging that Donald was neglected because Miller was not providing adequate food. The record reveals that Donald was hospitalized on December 19, 2003, for dehydration because he was not being fed. On January 20, 2004, a caseworker went to visit Miller and Donald to check on Donald's well-being. The caseworker found Donald lying in a playpen, looking ill, and suffering from cold-like symptoms. Donald's T-shirt had come off, and it was wrapped around his neck. His mother was asleep, and when awakened, revealed that she had not fed Donald for 18 hours. The caseworker arranged for Donald to be taken into protective custody. Donald was placed in foster care and adjudication proceedings were initiated. Notably, the record reveals that Donald's foster parents previously served as foster parents to Donald's older brother, also the child of respondent and Miller. The foster parents subsequently adopted Donald's older brother and intend to adopt Donald.

Donald was adjudicated neglected, and after a period of several months, petitions to terminate both respondent's and Miller's parental rights were filed. Miller's parental rights were ultimately terminated, and she did not contest the termination.

The petition filed against respondent alleged that he was unfit because: he failed to maintain a reasonable degree of interest, concern and responsibility toward Donald (750 ILCS 50/1(D)(b) (West 2002)); he is depraved due to a felony conviction for predatory criminal sexual assault of a child (750 ILCS 50/1(D)(i) (West 2002)); and he is incarcerated, provided little or no support for Donald prior to incarceration, and his incarceration will prevent him from parenting for more than two years (750 ILCS 50/1(D)(r) (West 2002)). Respondent was found unfit under sections 1(D)(i) and 1(D)(r) of the Adoption Act. Both findings of unfitness were reversed by the appellate court. The State, however, only contests the appellate court's finding with respect to the allegation of depravity. Accordingly, the facts set forth primarily relate to that allegation.

At the fitness hearing, caseworker Jacqui Walters from the Department of Children and Family Services (DCFS) testified that respondent never contacted DCFS to arrange visitation with Donald and never attempted to contact Donald through cards, letters, or gifts. She added that she sent respondent a copy of the DCFS service plan, which included recommendations for services such as parenting classes and sex offender treatment, but respondent never made contact with her to discuss the plan or inquire about contacting his son. Respondent testified that he has been incarcerated since May 19, 2003, and at the time of his testimony, he was housed in the Danville Correctional Center. A certified copy of his conviction for predatory criminal sexual assault of a child was admitted into evidence. Respondent stated that he was appealing his criminal conviction and hoped to get out of prison, obtain employment and a place to live, and raise Donald. He added that he was enrolled in GED classes at Danville, but was not participating in parenting classes because none were offered. There was no indication that he had initiated sex offender treatment. Respondent maintained that

˘3˘

he did not commit the crime for which he was convicted and asserted that he did not have any other felony convictions.

Judge DeArmond, who presided over the fitness hearing, had also presided over respondent's criminal trial. Defense counsel reminded the judge that respondent maintained that he did not commit the offense throughout the criminal trial and that the victim recanted. The trial judge stated: "I heard the case *** [a]nd I know what the testimony was." Defense counsel then asked the judge "to judicially notice the previous proceedings since–frankly, since we're fortunate enough to be in front of the Judge that heard that." The court responded:

> "I'll take judicial notice that Mr. Gaylord denied committing the offense; that it was a fairly unique fact situation in that the minor reported the allegations, subsequently recanted the allegations, and that there were issues with regard to whether there was pressure applied to the minor to get them to recant; but the testimony of Mr. Gaylord was that it did not happen."

In closing arguments, the State argued that respondent should be found depraved as a result of his conviction for predatory criminal sexual assault of a child. The following colloquy ensued as a result of that argument:

> "THE COURT: How does that qualify? The statute says aggravated criminal sexual assault.
>
> MS. RIGGS [Assistant State's Attorney]: I don't have the adoption code with me. I thought it was just any sexual conviction. But I could be wrong.
>
> THE COURT: I could be wrong, too. It lists a number of offenses for which a person can be found depraved. And on the next page, the very last offense, is aggravated criminal sexual assault. I mean, I may be missing–maybe there's some language in there that says any sexual offense. And if so, I'd take that into consideration. It's just it kind of looks like there's two classes. There's those which create–those for which a person can be found depraved, period. And then there's another group for which there's a rebuttable presumption that they're depraved."

˘4˘

Respondent's counsel also addressed this issue in closing argument, stating:

> "[T]o the extent that we're dealing with some sort of essentially a conclusive presumption, that the conviction ipso facto makes him depraved, or whether it's somehow a rebuttable presumption, but we would suggest that Mr. Gaylord at least ought to have an opportunity to contest whether he is depraved and, as best he can, has done so by offering testimony today and by the Court judicially noticing his previous testimony that essentially he did not participate on any assaultive behavior on the victim."

In rendering its judgment, the trial court did not consider the presumption. Instead, the court considered whether a single conviction could support a finding of depravity as defined by this court: "[D]epravity is ' "an inherent deficiency of moral sense and rectitude." ' " *In re Abdullah*, 85 Ill. 2d 300, 305 (1981), quoting *Stalder v. Stone*, 412 Ill. 488, 498 (1952). The trial court also looked to this court's analysis in *Abdullah*, along with the appellate court's holdings in *In re S.H.*, 284 Ill. App. 3d 392 (1996), and *In re A.H.*, 215 Ill. App. 3d 522 (1991), and concluded that the case law "does not prohibit a finding of depravity based on a single criminal conviction." The court added: "[a]nd when you consider the nature of the criminal conviction in relation to the nature of the case we're here on, I think it does constitute a sufficient basis for a finding of depravity under Subsection (D)(i). And I find that there is clear and convincing evidence based upon the felony conviction."

Respondent appealed the trial court's judgment, and the appellate court reversed, with one justice dissenting. The appellate court found that the trial court needed "something more" than the "mere fact" of respondent's conviction for predatory criminal sexual assault of a child to support a finding of depravity. 357 Ill. App. 3d at 940. The appellate court concluded that the trial court only took judicial notice of respondent's denials and the victim's recantation, but did not consider the underlying facts of the criminal case. 357 Ill. App. 3d at 940. Additionally, the appellate court recognized that section 1(D)(i) of the Adoption Act had been amended to

˘5˘

include specific offenses which triggered a presumption of depravity. 357 Ill. App. 3d at 940. The appellate court noted that predatory criminal sexual assault of a child was not enumerated in the statute, and thus declined to "assume that the legislature intended to include predatory criminal sexual assault of a child but simply neglected to do so." 357 Ill. App. 3d at 940. The appellate court ultimately concluded "that the burden was squarely on the State to provide evidence of respondent's depravity beyond the mere fact of his conviction for predatory criminal sexual assault of a child," and its failure to do so rendered the trial court's finding of depravity against the manifest weight of the evidence. 357 Ill. App. 3d at 940-41. We granted the State's petition for leave to appeal. 177 Ill. 2d R. 315(a).

Notably, since the filing of the State's petition, the appellate court has issued a Rule 23 order in respondent's criminal appeal, *People v. Gaylord*, No. 4–04–0169 (January 18, 2006) (unpublished order under Supreme Court Rule 23). At oral argument, respondent requested that this court take judicial notice of the Rule 23 order and the facts contained therein.[1] The State does not object, as it was the State's position that the trial court took judicial notice of the underlying facts of respondent's criminal conviction during the fitness hearing. Accordingly, we take judicial notice of the Rule 23 order.

According to the Rule 23 order, the evidence presented at respondent's criminal trial demonstrated that DCFS was called to investigate a charge of environmental neglect against Jason and Tabitha Traylor. The DCFS investigator interviewed D.B., Tabitha's daughter. D.B. was asked if she was afraid of

---

[1]Respondent previously filed a motion to strike portions of the State's brief and appendix which contained transcripts from the underlying criminal proceeding, the trial court's judgment and a copy of the sentencing order. Respondent maintained that this information was not properly introduced at trial and should not be considered here. We took the motion with the case. However, since the filing of the motion, respondent has asked this court to judicially notice the Rule 23 order which contains this information. Accordingly, respondent's motion to strike is rendered moot and is thus denied.

anyone, and she responded that she was afraid of respondent. She stated that respondent's private part had touched her private part. D.B. added that she was afraid she would get in trouble for telling because it was a secret.

A second DCFS investigator interviewed D.B. later that day. D.B. described the incident, stating that respondent put his private part inside her private part after giving her a bath. She stated that it hurt, but she did not cry. D.B. described the way respondent's private part looked and where it was located. She also stated that respondent placed his finger and a spoon in her vagina. When asked what she thought should happen to respondent, she replied that he should go to jail.

D.B. recanted her statements when testifying at trial. She averred that the DCFS investigator told her what to say and that respondent never touched her. The Traylors also testified, on respondent's behalf, that D.B. recanted her statements to them. They added that they had more than 10 adults talk to D.B. about her accusations against respondent, and she recanted to those adults as well. Additionally, they indicated that they considered respondent a "very good" friend.

Respondent testified at the trial. He denied committing the crime for which he was charged. However, in contrast to his testimony at the fitness hearing, he admitted that he had previously been convicted of criminal sexual assault, was placed on probation, and ordered to register as a sex offender for 10 years. He averred that he was 18 years old when he committed that offense and the victim was 16 years old.

The trial court concluded that D.B.'s statements to the DCFS investigators were credible and further found that D.B.'s recantation was the result of pressure from her parents, who were "very supportive" of respondent. The trial court further found that it was "obvious" that D.B.'s parents had "put substantial pressure on this victim." The court thus found respondent guilty of predatory criminal sexual assault of a child. The appellate court affirmed. *People v. Gaylord*, No. 4–04–0169 (January 18, 2006) (unpublished order under Supreme Court Rule 23). Respondent has since filed a petition for leave to appeal to this court on the criminal matter. People v. Gaylord, No. 102063 (pet. for leave to appeal pending).

With these background facts, we now consider whether the appellate court properly reversed the trial court's finding of unfitness and its ultimate termination of respondent's parental rights.

ANALYSIS

Under the Juvenile Court Act of 1987, the involuntary termination of parental rights involves a two-step process. First, there must be a showing, based on clear and convincing evidence, that the parent is "unfit," as that term is defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2002)). If the court makes a finding of unfitness, the court then considers whether it is in the best interests of the child that parental rights be terminated. See 705 ILCS 405/2–29(2) (West 2002); *In re C.N.*, 196 Ill. 2d 181, 209 (2001). Although section 1(D) of the Adoption Act sets forth numerous grounds under which a parent may be deemed "unfit," any one ground, properly proven, is sufficient to enter a finding of unfitness. See 750 ILCS 50/1(D) (West 2002); *In re C.W.*, 199 Ill. 2d 198, 210 (2002).

In this case, as previously stated, the trial court found respondent unfit on the ground of depravity. The trial court did not make this finding in reliance on a presumption of depravity. Rather, the trial court concluded, based on the evidence of respondent's criminal conviction, that the State met its burden of proving by clear and convincing evidence that respondent was depraved, in that he had an "inherent deficiency of moral sense and rectitude." See *In re Abdullah*, 85 Ill. 2d at 305. The appellate court reversed the trial court's judgment, finding that respondent's conviction for predatory criminal sexual assault of a child was insufficient, by itself, to support a finding of depravity. The State asserts that the appellate court erred in concluding that the State failed to meet its burden. According to the State, the fact that respondent was convicted of the offense of predatory criminal sexual assault of a child triggers a rebuttable presumption of depravity which can only be overcome if respondent shows, by clear and convincing evidence, that he is not depraved.

Respondent asserts that the plain language of section 1(D)(i) demonstrates that the offense of predatory criminal sexual assault of a child does not trigger a rebuttable presumption of depravity. Indeed, respondent argues that if the legislature intended for predatory criminal sexual assault of a child to trigger the presumption, it would have listed that offense in the statute.

Section 1(D)(i) of the Adoption Act provides in relevant part:

> "D. 'Unfit person' means any person whom the court shall find to be unfit to have a child, without regard to the likelihood that the child will be placed for adoption. The grounds of unfitness are any one or more of the following ***

> * * *

> (i) Depravity. Conviction of any one of the following crimes shall create a presumption that a parent is depraved which can be overcome only by clear and convincing evidence: (1) first degree murder in violation of paragraph 1 or 2 of subsection (a) of Section 9–1 of the Criminal Code of 1961 or conviction of second degree murder in violation of subsection (a) of Section 9–2 of the Criminal Code of 1961 of a parent of the child to be adopted; (2) first degree murder or second degree murder of any child in violation of the Criminal Code of 1961; (3) attempt or conspiracy to commit first degree murder or second degree murder of any child in violation of the Criminal Code of 1961; (4) solicitation to commit murder of any child, solicitation to commit murder of any child for hire, or solicitation to commit second degree murder of any child in violation of the Criminal Code of 1961; or (5) *aggravated criminal sexual assault in violation of Section 12–14(b)(1) of the Criminal Code of 1961*." (Emphasis added.) 750 ILCS 50/1(D)(i) (West 2002).

The issue before us is one of statutory construction. The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Ward*, 215 Ill. 2d

317, 324 (2005). The best evidence of legislative intent is the language of the statute, and when possible, the court should interpret the language of a statute according to its plain and ordinary meaning. *In re D.F.*, 208 Ill. 2d 223, 229 (2003). We do not construe words and phrases of a statute in isolation; instead, all provisions of a statute are viewed as a whole. *In re Detention of Lieberman*, 201 Ill. 2d 300, 308 (2002). "Legislative intent can be ascertained from a consideration of the entire Act, its nature, its object and the consequences that would result from construing it one way or the other." *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 96 (1990). Thus, we are not bound by the literal language of a statute if that language produces absurd or unjust results not contemplated by the legislature. *D.F.*, 208 Ill. 2d at 230. Issues of statutory construction are questions of law that we review *de novo*. *Ward*, 215 Ill. 2d at 324.

The State acknowledges that predatory criminal sexual assault of a child is not an offense enumerated in the statute. However, the State nevertheless maintains that the legislature intended to create a rebuttable presumption of depravity to be applied to the offense of predatory criminal sexual assault of a child, but made a drafting error. In support of this position, the State points out that the legislature cited to section 12–14(b)(1) of the Criminal Code. As the State correctly notes, in 1998, at the time of the enactment of section 1(D)(i) of the Adoption Act, section 12–14(b)(1) of the Criminal Code did not exist. In fact, the last time section 12–14(b)(1) appeared in the Criminal Code was 1994.

In 1994, section 12–14(b) of the Criminal Code stated, in relevant part:

> "(b) The accused commits aggravated criminal sexual assault if:
>
> (1) the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed; or
>
> (2) the accused was under 17 years of age and (i) commits an act of sexual penetration with a victim who

was under 9 years of age when the act was committed; or (ii) commits an act of sexual penetration with a victim who was at least 9 years of age but under 13 years of age when the act was committed and the accused used force or threat of force to commit the act." 720 ILCS 5/12–14(b)(1), (b)(2) (West 1994).

After 1994, the aggravated criminal sexual assault statute was divided. The conduct proscribed in section 12–14(b)(2), quoted above, became part of a new aggravated criminal sexual assault statute which was codified under sections 12–14(a), (b) and (c) of the Criminal Code. See 720 ILCS 5/12–14(a), (b), (c) (West 1998). The conduct set forth in section 12–14(b)(1) was named "predatory criminal sexual assault of a child" and became section 12–14.1(a)(1) of the Criminal Code (720 ILCS 5/12–14.1(a)(1) (West 1998)). Section 12–14.1 now provides in relevant part:

"(a) The accused commits predatory criminal sexual assault of a child if:

(1) the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed[.]" 720 ILCS 5/12–14.1(a)(1) (West 1998).

Language contained in the current predatory criminal sexual assault of a child statute is identical to the language set forth in section 12–14(b)(1) of the outdated aggravated criminal sexual assault statute cited by the legislature in amending the Adoption Act. The specificity of the citation suggests that the legislature intended to create a rebuttable presumption with respect to the conduct defined therein, *i.e.*, where "the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed."

The State argues that no other construction of section 1(D)(i)(5) of the Adoption Act is sensible, and we agree. Reading section 1(D)(i) as a whole, it becomes readily apparent that the legislature intended for the presumption of depravity to apply, in most instances, to those adults who

committed crimes against children. Indeed, the legislature created a presumption of depravity where a parent committed first or second degree murder of any child; attempted or conspired to commit first or second degree murder of any child; or solicited someone else to commit first or second degree murder of any child. See 750 ILCS 50/1(D)(i) (West 1998). In enacting this statute, the legislature's paramount concern was to protect children from parents who have harmed other children. Thus, it stands to reason that the legislature would intend to apply a rebuttable presumption of depravity to those adults who have committed a sex offense against a child. Significantly, the offense of predatory criminal sexual assault of a child, by definition, always involves an unlawful sex act between an adult and a child, whereas the conduct prescribed under the aggravated criminal sexual assault statute would, in most instances, involve an adult defendant and an adult victim. Compare 720 ILCS 5/12.14.1(a)(1), (a)(2), (a)(3) (West 1998) with 720 ILCS 5/12–14(a), (b), (c) (West 1998).

Under only one circumstance does the offense of aggravated criminal sexual assault exclusively apply to a child, and that circumstance occurs when the accused is under the age of 17. See 720 ILCS 5/12–14(b)(i), (b)(ii) (West 1998). However, it would be absurd for us to conclude that the legislature intended to create a presumption of depravity for those individuals who fall within that subsection of the aggravated criminal sexual assault statute to the exclusion of those individuals who committed the offense of predatory criminal sexual assault of a child. If that were the case, then the legislature intended to create a presumption of depravity for a juvenile under the age of 17 who commits aggravated criminal sexual assault, *i.e.*, an act of sexual penetration with a child under the age of 9 or between the ages of 9 and 12 (720 ILCS 5/12–14(b)(i), (b)(ii) (West 1998)), but did not intend for that presumption to apply to an adult who is 17 years of age or older who commits predatory criminal sexual assault of a child, *i.e.*, an act of sexual penetration with a child under the age of 13 (720 ILCS 5/12–14.1(a)(1) (West 1998)). Under that rationale, a 15-year-old who commits an act of sexual penetration with a 12-year-old would be subject to a

presumption of depravity under the Adoption Act, while respondent, who was over 18 years old when he committed an act of sexual penetration against D.B., a five-year-old, would escape the presumption. It seems unlikely that the legislature would exclude the offense of predatory criminal sexual assault of a child from its presumption under the Adoption Act when that statute exclusively applies to accused individuals over the age of 17, who are more likely to face termination proceedings than younger individuals.

Moreover, a comparison of the aggravated criminal sexual assault statute to the predatory criminal sexual assault of a child statute reveals that the legislature, by virtue of the sentencing scheme imposed for these offenses, deems the offense of predatory criminal sexual assault of a child to be more severe and, therefore, worthy of a harsher sentence. While both crimes require sentencing as a Class X offender, the legislature has seen fit to extend the sentence for predatory criminal sexual assault of a child, even for first-time offenders, to "not less than 50 years and not more than 60 years" under certain circumstances. Compare 720 ILCS 5/12–14.1(b)(1) (West 1998) with 720 ILCS 5/12–14(d)(1) (West 1998).

In sum, our review of the legislative history leads us to conclude that the legislature made an inadvertent drafting error in stating that the presumption of depravity applied to the offense of aggravated criminal sexual assault. The legislature intended for the presumption to apply to the conduct which now comprises the offense of predatory criminal sexual assault of a child.

Our opinion in *In re Detention of Lieberman*, 201 Ill. 2d 300 (2002), supports this conclusion. In that case, we considered whether the legislature intended to include the repealed offense of rape in a statute which enumerated offenses that were considered "sexually violent offenses," but did not actually name "rape." In 1984, the criminal offense of rape was repealed and subsumed within the definitions of several other offenses set forth in the Criminal Sexual Assault Act. Several years later, in 1998, the legislature passed the Sexually Violent Persons Commitment Act (Commitment Act) (725 ILCS 207/1 *et seq.* (West 1998)), which allows the State to petition the

court for the civil detention of sex offenders beyond the imposed period of imprisonment if the State can demonstrate that the defendant is a "sexually violent person." 725 ILCS 207/15 (West 1998); *Lieberman*, 201 Ill. 2d at 309. Certain offenses were considered "sexually violent offenses," and those offenses were enumerated by the legislature through reference to a statutory citation. Because the offense of rape had been repealed and was no longer in the Criminal Code, it was not enumerated as a qualifying "sexually violent offense."

In *Lieberman*, the defendant had been convicted of multiple rapes prior to the repeal of the statute. The State moved to classify him as a sexually violent person and increase his period of imprisonment. The defendant argued that his rape convictions could not be construed as sexually violent offenses under the Commitment Act because the offense of rape was not enumerated in the statute. The State, in turn, argued that the offense of rape was subsumed within the newly enacted sex offenses that were enumerated in the statute, and therefore, the defendant was subject to the Commitment Act. In construing the statute, we agreed with the State's position and found that the offense of rape was subsumed in the offenses enumerated in the Commitment Act, and thus concluded that the legislature intended for the crime of rape to constitute a sexually violent offense. *Lieberman*, 201 Ill. 2d at 317-18.

We also pointed out that the defendant's proposed interpretation of the statute would lead to absurd consequences which the legislature did not contemplate in light of the fact that it enacted a statute designed to keep citizens safe from dangerous sex offenders. *Lieberman*, 201 Ill. 2d at 320. Accordingly, we concluded that:

> "[T]he legislature's omission of the now-repealed offense of rape from this definition was purely inadvertent and constituted a situation 'where a legislative intention, otherwise clear, was in part mistakenly or inaccurately stated.' [Citation.] '[C]ourts must construe the acts to reflect the obvious intent of the legislature even if the words of a particular section must be read or modified or altered so as to comport

with the legislative intent.' [Citations.]" *Lieberman*, 201 Ill. 2d at 320.

We find in this case, as we did in *Lieberman*, that the legislature's failure to name the offense of predatory criminal sexual assault of a child in the statute was "purely inadvertent." The legislature simply cited to an outdated version of the Criminal Code wherein the offense of predatory criminal sexual assault of a child was included in the statutory definition of aggravated criminal sexual assault. However, the fact that the legislature referred to a specific section of that statute, rather than the statute as a whole, demonstrates that the legislature intended for that specific conduct to trigger the depravity presumption. As in *Lieberman*, the current situation involves " 'a legislative intention, otherwise clear' " that was " 'in part mistakenly or inaccurately stated.' " *Lieberman*, 201 Ill. 2d at 320, quoting *Gill v. Miller*, 94 Ill. 2d 52, 58 (1983). Accordingly, we construe the statute to reflect the " 'obvious intent of the legislature' " (*Lieberman*, 201 Ill. 2d at 320, quoting *People ex rel. Cason v. Ring*, 41 Ill. 2d 305, 313 (1968)) and conclude that the presumption applies to respondent, as he was convicted of the offense of predatory criminal sexual assault of a child prior to the fitness proceeding at issue.

Respondent argues that, even if the presumption applies pursuant to statute, it should not apply to him because his conviction for predatory criminal sexual assault of a child was wrongful. Respondent maintains that the evidence against him was insufficient because the victim recanted, no other evidence linked him to the crime, and he never admitted guilt. Respondent admits that he is asking us to review the propriety of his criminal conviction, even though that cause is not squarely before us. We decline to do so. As it stands, respondent was convicted of the offense of predatory criminal sexual assault of a child in a bench trial. The appellate court affirmed the conviction. *People v. Gaylord*, No. 4–04–0169. This court does not, *sua sponte*, review appellate court judgments, and we will not make an exception in this case. Accordingly, we conclude that respondent is subject to the rebuttable presumption of depravity based on his conviction for predatory criminal sexual assault of a child.

In light of this holding, we are bound to consider whether this matter must be remanded to the trial court for respondent to have the opportunity to rebut the depravity presumption. Based on our review of the record, we conclude that remand is not necessary in this case. The record plainly establishes that respondent's counsel acknowledged that respondent was given the opportunity to offer rebuttal evidence, and he did so by requesting that the trial court take judicial notice of his previous denials and the victim's recantation in his criminal case.

The question before us, then, is whether the evidence presented by respondent was sufficient to refute the State's *prima facie* case of depravity. In considering this question, we are cognizant that the trial court did not apply the depravity presumption when determining whether the evidence presented at the fitness hearing was sufficient to prove that respondent was depraved. Instead, the trial court based its finding on the general definition of depravity and the burden rested on the State to prove, by clear and convincing evidence, that respondent had an "inherent deficiency of moral sense and rectitude." However, in applying the presumption, respondent now bears the burden of refuting the presumption by clear and convincing evidence. 750 ILCS 50/1(D)(i) (West 2002).

As previously indicated, respondent attempted to refute the depravity allegation by offering evidence showing that he denied committing the underlying offense. Respondent also maintained that the evidence was insufficient to sustain a conviction because the victim recanted. However, the trial judge, who presided over respondent's criminal trial, had previously concluded that the victim's recantation came after great pressure was applied by her parents, and the victim's recantation testimony was thus deemed incredible by the court. Aside from refuting the facts of the criminal conviction, which respondent had the opportunity to do, respondent cannot present additional evidence that would overcome the depravity presumption. Notably, in this regard, the record already demonstrates that respondent has not engaged in sex offender treatment or any other counseling. The record likewise demonstrates that respondent, despite his testimony to the

contrary at the fitness hearing, is a repeat sex offender. Respondent himself admitted in his criminal trial that he was previously convicted for a sex offense, placed on probation, and ordered to register as a sex offender for 10 years.

We acknowledge respondent's argument that the trial judge erred in determining the credibility of the victim's recantation testimony in the criminal trial, and thus erred on the same grounds in this cause. However, as we previously stated, the trial court's alleged errors in respondent's criminal trial are not properly before us in this case and we will not consider them.

We are aware that respondent has filed a petition for leave to appeal the appellate court's judgment in his criminal case, which is currently pending. People v. Gaylord, No. 102063 (pet. for leave to appeal pending). However, the Adoption Act does not call for courts to reserve ruling on findings of unfitness which are related to criminal matters until the appellate process in the underlying cause has been exhausted. See *In re C.M.J.*, 278 Ill. App. 3d 885, 891 (1996). Accordingly, we conclude that it is unnecessary to remand this matter for further proceedings.

## CONCLUSION

We affirm the trial court's finding of unfitness on grounds of depravity and find that defendant's parental rights were properly terminated. The judgment of the appellate court is reversed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*