2020 IL App (2d) 200394-U
No. 2-20-0394
Order filed December 2, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* E.B., | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| a minor. | ) | |
| | ) | |
| | ) | No. 17-JA-365 |
| | ) | |
| (The People of the State of Illinois, | ) | Honorable |
| Petitioner-Appellee v. Monica E., | ) | Francis Martinez |
| Respondent-Appellant) | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not err in finding respondent unfit and terminating her parental rights.

¶ 2    After a hearing, the trial court found respondent, Monica E., unfit and terminated her parental rights over the minor, E.B. On appeal, Monica challenges only the trial court's unfitness findings. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    E.B. was born in August 2004. E.B. has a twin sister and three additional siblings. This appeal, however, concerns only Monica's rights over E.B.

¶ 5 In May 2017, Eric reported to the Bethalto police that Monica had disciplined him by striking him with a cell phone cord, which left welts on the back of E.B.'s legs. A hotline call was made to the Department of Children and Family Services (DCFS), and Monica was charged with aggravated domestic battery in Madison County. The State filed a petition alleging that E.B. had been abused by Monica (705 ILCS 405/2-3(2)(i) (West 2016)) and had been neglected because his environment was injurious to his welfare (705 ILCS 405/2-3(1)(b) (West 2016)).

¶ 6 A shelter care hearing was held and the court awarded temporary custody of four of the children, including E.B., to their father E.B., Sr., who resided in Rockford as did the children's extended family. Subsequently, the court found Eric B., Sr., lacked adequate housing for the children in Rockford and awarded guardianship and custody to DCFS, which placed the children in traditional foster care in Winnebago County. In November 2017, the court found E.B. had been abused and neglected, and adjudicated him a ward of the court. In the same order, the court transferred all four cases to Winnebago County.

¶ 7 At the first permanency hearing in March 2018, the court found that Monica had not made reasonable efforts or reasonable progress. See 705 ILCS 405/2-28 (West 2016). The children's permanency goal remained at return home. Following a second permanency hearing in September 2018, the court again found that Monica had not made reasonable efforts or reasonable progress. See *id.* The court lamented that the children's "prognosis of reunification" with Monica was "rather poor." The court then changed the minors' permanency goal to substitute care pending a determination of parental rights.

¶ 8 In October 2018, the State filed its petition to terminate Monica's parental rights. With respect to Monica, the State's petition alleged that she was unfit in that she: (1) failed to make reasonable efforts toward E.B.'s return within nine months after the adjudication of neglect (750

ILCS 50/1(D)(m)(i) (West 2016)); (2) failed to make reasonable progress towards E.B.'s return within nine months after the adjudication of neglect (750 ILCS 50/1(D)(m)(ii) (West 2016)); (3) failed to make reasonable progress towards E.B.'s return during any subsequent nine-month period (750 ILCS 50/1(D)(m)(iii) (West 2016)). The State's petition alleged that the relevant nine-month periods were November 13, 2017, through August 13, 2018, and December 26, 2017, through September 26, 2018.

¶ 9    A hearing on the State's petition commenced in March 2019. Jessica Wickenhauser, a DCFS caseworker, testified that she had been the family's initial caseworker. After shelter care, Monica remained in Alton, in southern Illinois, and Wickenhauser coordinated Monica's services near her residence. Wickenhauser stated that after an integrated assessment in July 2017, Monica's service plan called for her to complete a mental health assessment, individual counseling, parenting classes, health counseling, a substance abuse assessment, and to follow-up with all recommended treatments. Monica completed a mental health assessment in January 2018, but Wickenhauser was skeptical of the assessment's completeness, as it did not include any recommend services. For example, Wickenhauser noted that Monica had previously reported "high levels of stress" and physical symptoms of anxiety (such as vomiting), which Monica did *not* report to the initial psychological evaluator. Wickenhauser also noted some concerns regarding Monica's "cognitive abilities" as Monica was often uncertain as to whether it was her responsibility to make appointments for follow-up services and treatment. As a result, Wickenhauser advised Monica to return for another assessment and to fully report her physical and psychological symptoms. Ultimately, Monica did not complete the second assessment until October 2018, wherein she was diagnosed with adjustment disorder with depression and anxiety. In addition, Monica never began recommended services, such as individual counseling or psychiatric treatment.

¶ 10    Monica also presented with substance abuse concerns that went unaddressed. For example, Wickenhauser noted that one evaluator smelled marijuana in Monica's home, which was detailed in her substance abuse assessment in April 2018. Accordingly, it was recommended that Monica "follow up with [outpatient] treatment due to high levels of THC." Monica never participated in this recommended outpatient treatment. Furthermore, because Monica did not enroll in substance abuse treatment, she was ineligible for parenting classes through Chestnut Health Systems in Granite City, Illinois. In addition, E.B., Sr., reported that Monica used heroin; however, this allegation was never confirmed nor denied.

¶ 11    Wickenhauser also reported that Monica did not have stable housing and stayed in hotels for approximately two months while the case was pending. In general, Monica worked cleaning hotels and delivering food in Missouri; however, Monica's employment history could not be confirmed.

¶ 12    Randy Kuehn, a DCFS placement supervisor, testified regarding Monica's twice-yearly service plans, which were admitted without objection. The service plans called for Monica to obtain substance abuse treatment, mental health services, psychological evaluation, parenting training, maintain stable housing, and also participate in parent-child visitation. Kuehn testified that Monica often participated in supervised visitation every two weeks in Rockford; however, it was difficult to arrange visitation with all of the children due to the children having been placed with different relatives and foster families.

¶ 13    The service plans admitted into evidence painted a clearer picture of the children's home life with Monica. When Monica was arrested for striking E.B., E.B.'s 11-year-old twin sister ran out into the street and demanded that the police shoot her. Monica refused to consent to her daughter's psychiatric treatment; Monica was then indicated for medical neglect. With respect to

Monica striking E.B. with the phone cord, Monica reported that she "whooped" E.B. Monica then explained that E.B. only had "cuts, welts, and bruises" on his legs, and ran to the police department, because "he bruises easily due to being bi-racial." In her initial service plan, Monica reported "past and current depression/anxiety issues." Specifically, "Monica report[ed] some depression now that her children have been removed, she has been *** verbally aggressive when discussing the reason her children came into foster care and about visits. She does not seem to have empathy for her children and what they are currently experiencing as a result of being in foster care." The report further noted that E.B., due to behavioral issues, eventually required specialized foster care placement near Rockford. As for Monica, the report stated that she obtained suitable housing for herself and the four children in March 2018 in East Alton, Illinois. Monica reported that she was able to afford the house because a "Mr. Mike" who lives in Michigan assisted her with rent and other financial needs.

¶ 14     Monica stated "that she does not need parenting instruction and the way she has disciplined her children is not problematic." Monica also stated that "[E.B.] caused his own bruises" and she blamed the child protection investigator for "her losing her job and going to jail." Monica also stated that her children "needed her" and felt unsafe in their foster homes. Monica stated that she would take them from their foster homes and when she was told that the police would be called Monica replied "it didn't matter."

¶ 15     Following the unfitness hearing, the trial court found that the State had proved Monica's unfitness by clear and convincing evidence, and stated:

> "Mother's counts were failure to make reasonable efforts and failure to make reasonable progress during the relevant nine-month periods. It is noted that Mother did not progress to unsupervised visitation during these proceedings.

The goal was changed on September 12, 2018. And at that time, *** such a finding—the goal change finding indicated that reunification was unlikely in a reasonable period of time, and therefore the goal was changed.

As of that date, [Mother] had not engaged in substance abuse services. And despite a mental health assessment that indicated no services, the caseworker observed symptoms of significant anxiety and depression, and the service was recommended *** which indicated to the Court of course that the assessment was probably less than accurate, and those services were not complied with.

As I said, Mother had not progressed to unsupervised visits, let alone a return home. Now, there was some testimony from a caseworker who is currently monitoring the case *** of Mother's progress since [the goal change], but those fall outside the periods that are alleged by the State. And the State has alleged certain nine-month periods, and those were—in those periods there was a failure to make reasonable efforts and reasonable progress by clear and convincing evidence."

With that, the court entered orders finding Monica unfit.

¶ 16    Over the course of the following year, the court held a series of best interest hearings for all four children, and Monica's parental rights were terminated in June 2020. Monica timely appealed; however, as her appeal is confined to challenging the trial court's unfitness findings in relation to E.B., we can similarly limit our analysis to that issue.

¶ 17                                II. ANALYSIS

¶ 18    We focus on the evidence concerning the first nine-month period, as we may affirm a finding of unfitness based on a parent's failure to make reasonable progress in any single nine-month period. *In re J.L.*, 236 Ill. 2d 329, 340 (2010); see also *In re Donald A.G.*, 221 Ill. 2d 234,

244 (2006); *In re C.W.*, 199 Ill. 2d 198, 210 (2002) (any one ground, properly proven, is sufficient to enter a finding of parental unfitness). Reasonable progress is measured by an objective assessment of a parent's progress in a given nine-month period toward reunification with the child, which includes compliance with service plans and court directives. *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001). A parent will be found to have made reasonable progress if and only if her actions during that period indicate that the court will be able to order that the child be returned home in the near future. *In re Phoenix F.*, 2016 IL App (2d) 150431, ¶ 7. Conversely, the failure to make reasonable progress includes the parent's failure to fulfill her obligations under the service plan. *Id*. In order to reverse a finding of parental unfitness, the reviewing court must conclude that the trial court's finding was against the manifest weight of the evidence, meaning that the opposite conclusion was clearly apparent. *In re C.N.*, 196 Ill. 2d at 208.

¶ 19     In the trial court, service plans were introduced that covered the initial nine-month period after adjudication—*i.e.*, November 13, 2017, through August 13, 2018. Those service plans called for Monica to establish and maintain a suitable residence for E.B.'s care; for Monica to establish and maintain visitation with E.B.; for Monica to comply with all court orders; and for Monica to obtain assessments and begin services for parenting classes, domestic violence counseling, psychiatric treatment, and substance abuse treatment.

¶ 20     During this time, Monica failed to complete an accurate psychological assessment. In particular, she failed to report her physical symptoms related to her psychological issues, all of which prevented her from obtaining necessary psychological treatment. This delay also prevented her from obtaining individual counseling, parenting classes, and substance-abuse treatment—all of which could have helped her as a person and as a parent. Instead, throughout this initial nine-month period, the record reflects that Monica failed to take her own welfare and treatment

seriously. We agree with the trial court that, during this nine-month period, Monica made *no* real progress towards unsupervised visitation, steady employment, or the establishment of a suitable home for E.B.'s care.

¶ 21    Here, Monica failed to complete her obligations under the service plan during the relevant nine-month period. The evidence showed that E.B. absolutely could not be returned to Monica's care in the "near future," especially during this time period. Accordingly, the trial court's finding that Monica was unfit pursuant to section 1(D)(m)(ii) of the Adoption Act because she failed to make reasonable progress during the nine-month period of November 13, 2017, through August 13, 2018, was not against the manifest weight of the evidence. Because only one ground for a finding of unfitness is necessary to uphold a circuit court's finding, we need not review the other bases of the trial court's findings of unfitness. See *In re Gwynne P.*, 215 Ill. 2d 340, 349 (2005) (parental rights may be terminated where there is a single alleged ground for unfitness supported by the evidence).

¶ 22                                  III. CONCLUSION

¶ 23    After carefully reviewing the record, we agree with the trial court that clear and convincing evidence established Monica's parental unfitness. Accordingly, we affirm the judgment of the Circuit Court of Winnebago County.

¶ 24    Affirmed.