2024 IL App (4th) 240113-U

NOS. 4-24-0113, 4-24-0114, 4-24-0115 cons.

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 29, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* S.V., R.T., and L.V., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Tazewell County |
| Petitioner-Appellee, | ) | Nos.  20JA264 |
| v. | ) | 20JA265 |
| Angel V., | ) | 22JA169 |
| Respondent-Appellant). | ) | |
| | ) | Honorable |
| | ) | David A. Brown, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Knecht and Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed the trial court's judgment terminating respondent's parental rights, concluding the court's best interest determination was not against the manifest weight of the evidence.

¶ 2    In September 2022, October 2022, and May 2023, the State filed petitions to terminate the parental rights of respondent, Angel V., as to her minor children, S.V. (born in 2018), R.T. (born in 2020), and L.V. (born in 2022). In January 2024, the trial court found termination of respondent's parental rights was in the minors' best interest. (S.V.'s father, Devaniel R., R.T.'s father, Austin T., and L.V.'s father, Wesley S., are not parties to this appeal.)

¶ 3    Respondent appeals, arguing the trial court's best interest determination was against the manifest weight of the evidence. We affirm.

¶ 4                              I. BACKGROUND

¶ 5                                    A. The Neglect Petitions

¶ 6            In September 2020, the State filed petitions to adjudicate S.V. and R.T. neglected under the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1-1 *et seq.* (West 2020)). The State alleged S.V. and R.T. were in an environment injurious to their welfare (705 ILCS 405/2-3(1)(b) (West 2020)) in that, *inter alia*, (1) one of their siblings died of asphyxiation in the home while respondent was in the caretaking role of this child, as well as S.V. and R.T.; (2) S.V. was being confined in his bedroom alone for hours at a time with no human contact; and (3) respondent had hit S.V. in the face, thrown him into a portable bassinet, and shoved him into a glass display case. The State additionally alleged an injurious environment for S.V. in that Devaniel R. had been convicted of sexual crimes against a child and had not completed sex offender treatment. In August 2022, the State filed a petition to adjudicate L.V. neglected under the Juvenile Court Act. The State alleged L.V. was in an environment injurious to her welfare in that, *inter alia*, (1) respondent pleaded guilty to involuntary manslaughter in connection with the death of her child and was sentenced to nine years' imprisonment and (2) Wesley S. was indicated in January 2021 for breaking an 11-month-old's arm.

¶ 7            In June 2021, the trial court adjudicated S.V. and R.T. neglected, found respondent unfit for reasons other than financial circumstances alone to care for them, made them wards of the court, and placed their guardianship and custody with the Illinois Department of Children and Family Services (DCFS). In November 2022, the court found the same in L.V.'s case.

¶ 8                                    B. The Termination Petitions

¶ 9            In September 2022, the State filed petitions to terminate respondent's parental rights as to S.V. and R.T. In October 2022, the State filed a petition as to L.V. In May 2023, the State filed supplemental petitions as to all three minors. Between the initial and supplemental

- 2 -

petitions, the State alleged respondent was unfit where she (1) was convicted of the death of a child by physical abuse (involuntary manslaughter) (750 ILCS 50/1(D)(f)(2) (West 2022)), (2) failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2022)), and (3) was depraved within the meaning of the Adoption Act (750 ILCS 50/1(D)(i) (West 2022)). As to S.V. and R.T., the State additionally alleged respondent was unfit for failing to (1) make reasonable progress toward their return within nine months after the adjudication of neglect, specifically between August 11, 2021, and May 11, 2022 (750 ILCS 50/1(D)(m)(ii) (West 2022)) and (2) protect them from conditions within their environments injurious to their welfare (750 ILCS 50/1(D)(g) (West 2022)).

¶ 10 In June 2023, the trial court found respondent unfit by clear and convincing evidence.

¶ 11 C. The Best Interest Hearing

¶ 12 In January 2024, the trial court conducted a best interest hearing.

¶ 13 1. *The Best Interest Reports*

¶ 14 The trial court accepted the best interest reports prepared by Lutheran Social Services of Illinois. The reports indicated caseworker Jessica Jackson observed "positive and affectionate" interactions and a "significant, stable bond" between the minors and their foster parent, Tanya H. Tanya had been meeting the minors' needs for food, clothing, shelter, and medical care. The minors also enjoyed the support provided by Tanya's family. By contrast, due to her incarceration and a no-contact order, respondent did not have a parent-child bond with the minors.

¶ 15 2. *The Testimony*

¶ 16 a. Cody Martin

- 3 -

¶ 17          Cody Martin was the supervisor of the minors' cases from April 2023 to November 2023. Martin testified she visited Tanya's home and found it was clean and appropriate. Martin observed all three minors were happy there. Martin had no concerns "whatsoever" about the minors remaining in Tanya's home. Tanya and the minors showed love and affection toward one another. According to Martin, Tanya's home was the least disruptive placement for the minors and Tanya was willing to provide permanency for them. On cross-examination, Martin acknowledged respondent wanted to have visitation with the minors, but the trial court suspended it.

¶ 18                              b. Tanya H.

¶ 19          Tanya H. testified S.V. considered her home S.V.'s home. Tanya provided S.V.'s food, clothing, shelter, and medical care. While S.V. knew respondent was his biological mother, he had only mentioned her "a couple times." According to Tanya, S.V. once referred to respondent as his "bad mom" because of her mistreatment of him. S.V. wanted to stay with Tanya. S.V. was in kindergarten and participated in a flag football program. S.V. had behavioral problems, but they were being addressed at school. Tanya attended meetings at school to address these problems. While there were still some "rough days," S.V. was "improving," and Tanya still wanted to adopt S.V.

¶ 20          Tanya testified R.T. was bonded with S.V. and L.V. Further, R.T. had not asked Tanya who his biological mother was. R.T. felt love and attachment with Tanya. R.T. considered Tanya's home his home. Tanya provided R.T.'s food, clothing, shelter, and medical care. R.T. wanted to stay with Tanya, and Tanya was willing to provide permanency through adoption.

¶ 21          Tanya brought L.V. home from the hospital and has cared for her ever since. Tanya provided L.V.'s food, clothing, shelter, and medical care. L.V. and respondent interacted with one

another once by video call right after L.V. was born. Though L.V. was not available for adoption at the time of the hearing, Tanya still wanted to keep L.V. in her home with S.V. and R.T.

¶ 22                                        c. Respondent

¶ 23            Respondent testified while her projected release date was in July 2026, it could be sooner if she participated in drug and educational programs. Respondent maintained if her parental rights were not terminated, she would be willing to engage in all her recommended services. Respondent created pictures and birthday cards for the minors and purchased clothes and toys for them. However, due to the no-contact order, respondent was unable to give them to the minors.

¶ 24                                3. *The Trial Court's Ruling*

¶ 25            The trial court stated it considered the best interest reports, the testimony, and the statutory best interest factors. According to the court, there was a substantial need for permanency in this case. The court noted Tanya had provided for the minors' physical safety and welfare, as well as providing food, shelter, medical care, and clothing "for the vast majority of their lives." The minors' identity, family background, attachments, security, familiarity, continuity of affection, and least disruptive placement alternative were all with Tanya. The court noted S.V. and R.T. considered Tanya's home their home. The court found termination of respondent's parental rights was in the minors' best interest. It named DCFS as guardian, with the right to consent to adoption regarding S.V. and R.T. and the right to place L.V.

¶ 26            This appeal followed.

¶ 27                                II. ANALYSIS

¶ 28            On appeal, respondent challenges only the trial court's best interest determination, arguing it was against the manifest weight of the evidence.

¶ 29    Under section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West 2022)), the involuntary termination of parental rights involves a two-step process. First, the State must prove by clear and convincing evidence the parent is "unfit," as that term is defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). *In re Donald A.G.*, 221 Ill. 2d 234, 244, 850 N.E.2d 172, 177 (2006).

¶ 30    When a trial court finds a parent unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352, 818 N.E.2d 1214, 1220 (2004). "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. The State must prove by a preponderance of the evidence termination of parental rights is in the minor's best interest. *D.T.*, 212 Ill. 2d at 366. In making the best interest determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2022)). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re*

*Jay. H.*, 395 Ill. App. 3d 1063, 1071, 918 N.E.2d 284, 291 (2009) (citing

705 ILCS 405/1-3(4.05) (West 2008)).

"The court's best interest determination [need not] contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19, 8 N.E.3d 1258. On review, "[w]e will not disturb a court's finding that termination is in the [child's] best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961, 835 N.E.2d 908, 914 (2005). "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such that no reasonable person could arrive at the circuit court's finding on the basis of the evidence in the record [citation]." (Internal quotation marks omitted.) *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68, 162 N.E.3d 454.

¶ 31         Here, the evidence demonstrated there were "positive and affectionate" interactions and a "significant, stable bond" existed between Tanya and the minors. By contrast, respondent had no parent-child bond due to her incarceration and the no-contact order. Tanya's home was clean and appropriate, and the minors wanted to remain there. Tanya provided for the minors' needs, including food, clothing, shelter, and medical care. The minors also enjoyed the support provided by Tanya's family. S.V. had only spoken with Tanya about respondent "a couple times" and referred to respondent as his "bad mom." Tanya testified she attended meetings at S.V.'s school to address his behavioral issues and noted they were improving. R.T. had never asked Tanya who his biological mother was. Tanya brought L.V. home from the hospital after she was born. L.V. and respondent have only interacted once, by video call. Tanya wanted to provide permanency for all three minors. The trial court considered the evidence in relation to the statutory best interest factors and found all of them weighed in favor of terminating respondent's parental

- 7 -

rights. We cannot conclude the evidence in the record "clearly calls for the opposite finding" or is such that "no reasonable person" could find as the court found. (Internal quotation marks omitted.) *J.H.*, 2020 IL App (4th) 200150, ¶ 68. Accordingly, the court's best interest determination was not against the manifest weight of the evidence.

¶ 32                                III. CONCLUSION

¶ 33            For the reasons stated, we affirm the trial court's judgment.

¶ 34            Affirmed.