NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 241595-U

NOS. 4-24-1595, 4-24-1596 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 2, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* D.N. and De. N., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Peoria County |
|       Petitioner-Appellee, | ) | Nos. 21JA174 |
|       v. | ) |     21JA176 |
| Dujuane N., | ) | |
|       Respondent-Appellant). | ) | |
| | ) | Honorable |
| | ) | David A. Brown, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Doherty and Grischow concurred in the judgment.

**ORDER**

¶ 1  *Held*: The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment terminating respondent's parental rights.

¶ 2  In September 2023, the State filed petitions to terminate the parental rights of respondent, Dujuane N., to his minor children, D.N. (born May 2019) and De. N. (born May 2019). Following the fitness and best interest hearings, the trial court granted the State's petition and terminated respondent's parental rights. (The parental rights of the minors' mother were also terminated; however, she is not a party to this appeal.) Respondent timely filed a notice of appeal, and counsel was appointed to represent him. Appellate counsel now moves to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), contending there are no meritorious issues of procedure or substance to be raised on appeal which would warrant relief. We agree, grant

counsel's motion to withdraw, and affirm the court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4        In May 2021, the State filed separate neglect petitions for the minors pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-2(1)(b) (West 2020)), contending the minors' environment was injurious to their welfare. Relevant to this appeal, the petitions alleged: (1) D.N. suffered a healing fracture on his left humerus for which his mother failed to seek medical treatment, (2) the minors' mother failed to participate in services, (3) in September 2020, the minors' mother permitted her paramour, a registered sex offender, to reside with them, (4) in September 2018, respondent struck the minors' mother while she was pregnant and while one of the minors was present, (5) in February 2018, respondent reported he had consumed cocaine, and (6) respondent's criminal history included two convictions for residential burglary, a conviction for being a felon in possession of a firearm, a conviction for domestic battery, and a pending charge for murder. Following a combined hearing, the trial court entered a temporary custody order in each case placing the minors in the custody of the Illinois Department of Children and Family Services (DCFS).

¶ 5        In July 2021, the trial court entered an adjudicatory order following respondent's admission and found both minors neglected. That same day, the court entered a dispositional order on the basis of respondent's incarceration, making the minors wards of the court after finding respondent unfit or unwilling for reasons other than financial circumstances to properly care for the minors. Custody and guardianship of the minors was placed with DCFS, and respondent was ordered to cooperate with all directives from DCFS.

¶ 6        In September 2023, the State filed petitions to terminate respondent's parental rights, alleging in each petition, he was unfit in that he was a depraved person having been

convicted of (1) first degree murder (count I) (750 ILCS 50/1(D)(i) (West 2022)) and (2) murder, aggravated unlawful use of a weapon, residential burglary, and attempted residential burglary (count II) (*id.*).

¶ 7                              A. Fitness Hearing

¶ 8             On May 22, 2024, the trial court held a fitness hearing. Respondent appeared via Zoom from prison. Without objection, the court took judicial notice of the court file and admitted into evidence, also without objection, four exhibits pertaining to respondent's certified convictions for (1) attempted residential burglary, (2) residential burglary, (3) aggravated unlawful use of a weapon, and (4) first degree murder. The matter was continued by agreement of the parties.

¶ 9             The fitness hearing resumed on November 20, 2024. Respondent again appeared via Zoom. Evidence unrelated to respondent was admitted and the State rested. Respondent testified he had been incarcerated since 2020. He had attempted to complete court-ordered services but was unable to do so because the "facility stays on lockdown so much." He had attended "mental health groups" and had a job for two years. He had not been disciplined for any misbehavior. He stated he had a couple of video visits with his son and called him regularly on the phone. He described the visits as "good." On cross-examination, respondent stated he was incarcerated for first degree murder with an expected discharge date of 2095.

¶ 10            The trial court found, based on respondent's certified convictions, the presumption of depravity applied. The court found the State had met its burden by clear and convincing evidence on both depravity counts. The matter immediately proceeded to the best interest hearing.

¶ 11                           B. Best Interest Hearing

¶ 12            The trial court took judicial notice of the best interest report which stated respondent had been incarcerated for the duration of the case. The minors had a positive but "not

a strong relationship due to [a] lack of contact" because of respondent's incarceration. The report stated the minors would benefit from continued interaction with respondent, but he would be unable to meet the needs of the minors due to his incarceration.

¶ 13    Emmet Lange, the caseworker, testified the minors had been placed with a paternal second cousin since October 2023. Lange noted the minors' current placement was stable, but DCFS was looking for a new placement due to De. N.'s emotional issues. De. N. was undergoing weekly counseling. De. N.'s current caregiver was affording DCFS "as much time as [they] need to find a good placement." Regarding the minors' relationship with respondent, Lange said it was not a strong relationship since their only contact was through sporadic video visits. The minors have bonded with their current caregiver and their emotional and physical needs were being met. During cross-examination, Lange noted since the minors are twins, they would not be separated. Lange stated a new placement for the minors had been identified, but the prospective placement was awaiting the results of the termination proceedings.

¶ 14    Respondent testified he had spoken to the minors by phone every other day for the past six months. The minors would often ask when he would be "getting out of jail" because they wanted to stay with him. He stated he was appealing his conviction and could possibly be released in the next two years. He said the minors tell him they miss him and they want to live with him.

¶ 15    When considering the statutory best interest factors (705 ILCS 405/1-3(4.05) (West 2022)), the trial court found the minors' physical safety, food, shelter, health, and clothing had been provided by their caregiver. The court found the minors' "development of their identity" and "background and ties" were neutral factors. Because the minors' placement going forward was uncertain, the court found "continuity of affection" and the "least disruptive placement" were neutral factors. Regarding the minors' preference, the court recognized respondent's testimony

that the minors preferred to live with him but also noted such an opportunity was "very remote." The court found the minors' "community ties," in terms of their school, church, and friends, was also a neutral factor. Overall, the court found the State had proven by a preponderance of the evidence it was in the minors' best interest to terminate respondent's parental rights.

¶ 16 Respondent timely filed a notice of appeal, and the trial court appointed counsel to represent him. Appellate counsel filed a motion to withdraw pursuant to *Anders* and a supporting brief providing a statement of facts, a list of potential issues, and arguments as to why those issues lack arguable merit. See *In re J.P.*, 2016 IL App (1st) 161518, ¶ 8 (finding *Anders* applies when counsel seeks to withdraw from representation on direct appeal from orders affecting parental rights under the Juvenile Court Act). Appellate counsel provided proof of service of her motion and a memorandum on respondent, and this court granted respondent the opportunity to file a response. Respondent failed to respond.

¶ 17                                  II. ANALYSIS

¶ 18 Appellate counsel seeks to withdraw as counsel, contending there are no meritorious claims for review. Counsel indicated she considered whether (1) the trial court erred when finding respondent to be a depraved person and (2) whether the court's best interest findings were against the manifest weight of the evidence. Counsel determined the preceding arguments would be frivolous and patently without merit. After reviewing the record, we agree with counsel and conclude there are no meritorious arguments to be considered on appeal.

¶ 19                          A. Findings of Parental Unfitness

¶ 20 Parental rights may not be terminated without the parent's consent unless the trial court first determines, by clear and convincing evidence, the parent is unfit under section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2022)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005).

Pursuant to section 1(D)(i) of the Adoption Act, a parent may be found unfit by reason of depravity, wherein a conviction for first degree murder creates "a presumption that a parent is depraved which can be overcome only by clear and convincing evidence." 750 ILCS 50/1(D)(i) (West 2022). "A trial court's determination that a parent's unfitness has been established by clear and convincing evidence will not be disturbed on review unless it is contrary to the manifest weight of the evidence." *Gwynne P.*, 215 Ill. 2d at 354.

¶ 21          The trial court found the State established respondent's unfitness by clear and convincing evidence on multiple grounds. The State provided a certified copy of respondent's conviction of first degree murder. At the time of the fitness hearing, respondent, due to his incarceration, had limited interaction with the minors, was unable to complete court-ordered services, and was unable to provide for the minors. There was no evidence presented, let alone clear and convincing evidence, to overcome the presumption defendant was a depraved person pursuant to the Adoption Act. We note respondent, at the best interest hearing, contended he was appealing his conviction and was optimistic he could be released from prison within two years. However, such a consideration would not rebut a depravity finding. See *In re Donald A.G.*, 221 Ill. 2d 234, 254 (2006) ("[T]he Adoption Act does not call for courts to reserve rulings on findings of unfitness which are related to criminal matters until the appellate process in the underlying cause has been exhausted.").

¶ 22          Based on the evidence presented, we agree with appellate counsel any argument the trial court's finding of unfitness was against the manifest weight of the evidence would be meritless. The court's determination respondent was a depraved person and an unfit parent is supported by the record and not against the manifest weight of the evidence. Because we need only find one of the alleged grounds of unfitness to be supported by clear and convincing evidence, we

need not address the other ground as alleged in the State's petition. See *Gwynne P.*, 215 Ill. 2d at 349. ("A parent's rights may be terminated if even a single alleged ground for unfitness is supported by clear and convincing evidence.").

¶ 23                    B. Best Interest Determination

¶ 24        After a trial court finds a parent is unfit, "the court then determines whether it is in the best interest of the minor that parental rights be terminated." *In re D.T.*, 212 Ill. 2d 347, 352 (2004). The trial court's best interest determination will not be reversed unless it is against the manifest weight of the evidence. *In re J.B.*, 2019 IL App (4th) 190537, ¶ 33. "A best-interest determination is against the manifest weight of the evidence only if the facts clearly demonstrate that the trial court should have reached the opposite result." *Id.*

¶ 25        At the best interest hearing, the State must prove by a preponderance of the evidence termination of parental rights is in the child's best interest. See *D.T.*, 212 Ill. 2d at 367. The trial court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act. See 705 ILCS 405/1-3(4.05) (West 2022). However, the court is not required to make a specific reference to each factor in its findings. *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. These statutory factors include:

> "(1) the child's physical safety and welfare; (2) the development of
> the child's identity; (3) the child's background and ties, including
> familial, cultural, and religious; (4) the child's sense of attachments,
> including love, security, familiarity, and continuity of affection, and
> the least-disruptive placement alternative; (5) the child's wishes;
> (6) the child's community ties; (7) the child's need for permanence,
> including the need for stability and continuity of relationships with

parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

¶ 26    In this case, the evidence demonstrated the minors' needs were being met by their current placement and they had developed a bond with their caregiver. The trial court noted many of the statutory factors were neutral but that alone does not weigh against termination. The fact the minors appeared likely to be placed with a new caregiver does not entail it is not in their best interest to terminate respondent's parental rights. Respondent testified the minors wished to live with him, but he also testified his expected release date was in 2095. It is unreasonable to expect any reunification in the near future between respondent and the minors.

¶ 27    It is clear from this record the trial court did not take terminating respondent's parental rights lightly. As a reviewing court, we afford great deference to a trial court's best interest findings because it sits in a superior position to observe the witnesses, judge credibility, and assess the evidence. *In re C.P.*, 2019 IL App (4th) 190420, ¶ 71. Based on our review of the evidence, we agree with appellate counsel any argument it was not in the minors' best interest to terminate respondent's parental rights would be meritless. The court's best interest findings were based on an appropriate consideration of the statutory factors. Accordingly, we conclude the court's best interest determination was not against the manifest weight of the evidence.

¶ 28                                III. CONCLUSION

¶ 29    For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 30        Affirmed.