NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240647-U

NO. 4-24-0647

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 20, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re Z.S.*, a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Sangamon County |
|      Petitioner-Appellee, | ) | No. 21JA61 |
|      v. | ) | |
| Robert M., | ) | Honorable |
|      Respondent-Appellant). | ) | Karen S. Tharp, |
| | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices Lannerd and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held:*  The appellate court affirmed the trial court's termination of respondent's parental rights.

¶ 2    Respondent, Robert M., is the father of Z.S. (born in 2016). In April 2024, the trial court found respondent was barred from asserting any interest in Z.S. because he failed to register with the Putative Father Registry. See 750 ILCS 50/12.1 (West 2022). The court further found respondent was unfit under the Adoption Act because he failed to demonstrate a reasonable degree of interest, concern, or responsibility as to Z.S. and there was evidence of his intent to forgo his parental rights. See 750 ILCS 50/1 (1)(D)(b), (n) (West 2022). We note Z.S.'s mother, Chloee S. is not a party to this appeal. Proceedings regarding Z.S.'s sibling, V.P., are also not at issue.

¶ 3    Respondent appeals, arguing the trial court's findings were against the manifest

weight of the evidence. We disagree and affirm.

¶ 4                                    I. BACKGROUND

¶ 5                                 A. The Neglect Petition

¶ 6           On May 4, 2021, the State filed a petition for adjudication of wardship, naming

Chloee as Z.S.'s mother and listing his father as unknown. The State alleged Z.S. was neglected

under section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS

405/2-3(1)(b) (West 2020)) in that his environment was injurious to his welfare based on

(1) domestic violence between Chloee and her paramour, Victor P., (2) Chloee's drug use, and

(3) the presence of methamphetamine in the blood, urine, or meconium of Z.S.'s minor sibling.

¶ 7           In July 2021, the trial court held a dispositional hearing. Chloee stipulated to the

petition. The court found Chloee unfit, unable, or unwilling, for reasons other than financial

circumstances alone, to care for, protect, train, educate, supervise, or discipline Z.S. The court

made Z.S. a ward of the court, with both guardianship and custody awarded to the Illinois

Department of Children and Family Services (DCFS).

¶ 8                              B. The Termination Proceedings

¶ 9           On June 7, 2023, the State filed a motion for termination of parental rights,

alleging Chloee, Victor P., and Z.S.'s unknown father were unfit under the Adoption Act. The

State served the unknown father by publication.

¶ 10          On August 30, 2023, Chloee signed a final and irrevocable consent to adoption,

surrendering her parental rights. She also provided an affidavit of identification, listing

respondent as Z.S.'s biological father. She did not provide a last known address for respondent.

¶ 11          On October 18, 2023, the State filed a supplemental motion for termination of

parental rights, naming respondent as Z.S.'s father. The State alleged respondent was unfit under

the Adoption Act because he (1) failed to maintain a reasonable degree of interest, concern, or responsibility for Z.S.'s welfare, (2) abandoned Z.S., (3) deserted Z.S. for more than three months preceding commencement of the motion, and (4) manifested his intent to forgo his parental rights by failing to visit or contact Z.S. or communicate with DCFS. See 750 ILCS 50/1(1)(D)(a), (b), (c), (n) (West 2022). Summons was served on respondent via certified mail to a correctional facility in Florida. Respondent's first appearance in the case was filed on November 29, 2023.

¶ 12    In April 2024, the trial court conducted a bifurcated termination hearing on the State's motion. Respondent appeared by video and was represented by counsel.

¶ 13    1. *The Fitness Portion of the Termination Proceedings*

¶ 14    Meghan Swiat testified that she worked for the Center for Youth and Family Solutions and had been the caseworker on the matter since November 2021. Swiat stated Chloee had previously refused to name Z.S.'s biological father. On the day Chloee surrendered her parental rights, she identified respondent as Z.S.'s father. Respondent was located at a Florida correctional center, and DCFS requested DNA testing. Before Chloee identified respondent, DCFS had completed a Putative Father Registry search "and nothing came back." Respondent was not listed on Z.S.'s birth certificate.

¶ 15    Swiat testified that contacting the Florida correctional center was "a struggle." Swiat had difficulties contacting the correct person, but in September or October 2023, DCFS was able to get DNA from respondent. Sometime in March 2024, the DNA testing identified respondent as Z.S.'s father. Swiat did not know when or if respondent received those results.

¶ 16    Swiat admitted she "didn't really attempt to make any contact" with respondent after learning he was Z.S.'s father. She stated it had been hard to get ahold of respondent in the

first place, she did not know who to reach out to, and "[e]veryone was a little confused at Florida Correctional." Swiat stated respondent was incarcerated for "a variety of different reasons but some of those could be for aggravated battery with a deadly weapon, for kidnapping, burglary, robbery." He had a planned release date in November 2024.

¶ 17        Swiat stated her understanding was that respondent left Chloee when she was a couple of months pregnant and had not returned or contacted Chloee since then. Z.S. did not know respondent. Respondent had never contacted Z.S. or DCFS.

¶ 18        Swiat also stated her understanding was that respondent's biological mother had contact with Z.S.'s foster parent, but the foster parent never reported respondent made any contact. Swiat also testified respondent's counselor had her contact information, but respondent had not contacted Swiat or requested visits or calls with Z.S.

¶ 19        Respondent did not testify or offer any evidence. The trial court found respondent was barred from asserting any interest in Z.S. because he failed to register with the Putative Father Registry. See 750 ILCS 50/12.1 (West 2022). The court further found respondent failed to show any interest in Z.S. and evidenced an intent to forgo his parental rights. Thus, the court also found respondent unfit.

¶ 20        2. *The Best-Interest Portion of the Termination Proceedings*

¶ 21        Immediately after the fitness proceedings concluded, the trial court conducted a hearing on whether terminating respondent's parental rights was in Z.S.'s best interest. We note that the best-interest hearing is not at issue on appeal. The court found it was in the best interest of Z.S. to terminate parental rights. Accordingly, the court entered an order terminating parental rights and changing the permanency goal of Z.S. to adoption.

¶ 22        This appeal followed.

¶ 23                              II. ANALYSIS

¶ 24        On appeal, respondent argues the trial court erred in terminating his parental

rights when he was unaware he was Z.S.'s father.

¶ 25                    A. Applicable Law and Standard of Review

¶ 26        Under section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West

2022)), the involuntary termination of parental rights is a two-step process. First, the State must

prove by clear and convincing evidence the parent is "unfit," as defined in the Adoption Act.

*In re Donald A.G.*, 221 Ill. 2d 234, 244 (2006). If the State proves unfitness, it then must prove

by a preponderance of the evidence that termination of parental rights is in the best interest of the

child. *In re D.T.*, 212 Ill. 2d 347, 363-66 (2004).

¶ 27        Under the Adoption Act, a parent may be found unfit when he or she fails to

maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare or

there is evidence of an intent to forgo his or her parental rights. 750 ILCS 50/1(1)(D)(b), (n)

(West 2022). The State must prove unfitness as defined in section 1(D) of the Adoption Act (750

ILCS 50/1(D) (West 2022)) by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28.

¶ 28        A determination of parental unfitness involves factual findings and credibility

determinations that the trial court is in the best position to make. *In re M.I.*, 2016 IL 120232,

¶ 21. Accordingly, a trial court's finding of parental unfitness will not be reversed unless it is

against the manifest weight of the evidence. *N.G.*, 2018 IL 121939, ¶ 29. A decision is against

the manifest weight of the evidence when the opposite conclusion is clearly apparent. *N.G.*, 2018

IL 121939, ¶ 29.

¶ 29                        B. The Putative Father Registry

¶ 30        The trial court first found respondent was barred from asserting any interest in

Z.S. based on his failure to timely register with the Putative Father Registry. "The Putative Father Registry serves to aid in determining the identification and location of putative fathers." *In re A.S.B.*, 293 Ill. App. 3d 836, 848 (1997) (citing 750 ILCS 50/12.1 (West 1994)). Under section 12.1(b) of the Adoption Act, a putative father of a minor child may register with DCFS before the child's birth, but must do so no later than 30 days after the child's birth. 750 ILCS 50/12.1(b) (West 2022). A putative father who fails to register within the time allotted "is barred from thereafter bringing or maintaining any action to assert any interest in the child." 750 ILCS 50/12.1(g) (West 2022). However, if the putative father can prove by clear and convincing evidence it was not possible for him to register within the allotted time, his failure to register was not his fault, and he registered within 10 days after it became possible for him to do so, then he may assert his interest in the child. 750 ILCS 50/12.1(g), (1), (2),(3) (West 2022). Further, the failure to timely register shall constitute an abandonment of the child and shall be *prima facie* evidence of sufficient grounds to support termination of the father's parental rights under the Adoption Act. 750 ILCS 50/12.1(h)(ii) (West 2022).

¶ 31    Here, the State presented evidence respondent knew of Chloee's pregnancy but never registered with the Putative Father Registry, as required by the Adoption Act to preserve his rights. Even when respondent received notice of the proceedings involving Z.S. and was asked to provide DNA, he did not register. Respondent did not provide any evidence to show it was not possible for him to register. Thus, the trial court's determination that his failure to register barred him from asserting any interest in Z.S. was not against the manifest weight of the evidence.

¶ 32                        C. Reasonable Degree of Interest

¶ 33    The trial court also found respondent unfit because he failed to show a reasonable

degree of interest in Z.S. and evidenced an intent to forgo his parental rights under the Adoption Act. See 750 ILCS 50/1(1)(D)(b), (n) (West 2022). Because we have concluded the trial court correctly found respondent was barred from asserting an interest in Z.S. based on his failure to register with the Putative Father Registry, we need not discuss the court's alternate finding that he was also unfit because he failed to show a reasonable degree of interest, concern, or responsibility as to Z.S.'s welfare. Nevertheless, we note we also agree with the State that the court properly made such a finding.

¶ 34        Fitness is determined by the efforts the person makes to communicate with or show interest in the child. *In re Adoption of A.S.V.*, 268 Ill. App. 3d 549, 557 (1994). Even extreme circumstances that impede the parent's ability to develop a relationship with the child do not excuse a complete lack of communication or interest in the child. *A.S.V.*, 268 Ill. App. 3d at 558.

¶ 35        Here, the evidence demonstrated that, even after respondent became aware of Z.S., he made no effort at all to communicate with Z.S. or DCFS or otherwise show any interest in Z.S. Thus, aside from respondent's failure to register with the Putative Father Registry, the trial court also properly found respondent unfit based on his failure to demonstrate a reasonable degree of interest, concern, or responsibility as to Z.S.

¶ 36        Respondent does not argue the trial court erred in its ultimate determination that it was in the best interest of Z.S. to terminate his parental rights. Thus, we do not address that issue. In sum, we conclude the court's findings terminating respondent's parental rights were not against the manifest weight of the evidence.

¶ 37                                III. CONCLUSION

¶ 38        For the reasons stated, we affirm the trial court's judgment.

¶ 39          Affirmed.