2025 IL App (4th) 250079-U

NOS. 4-25-0079, 4-25-0080, 4-25-0081, 4-25-0082 cons.

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 20, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* Onjana. W., Onjanet. W., Onjani. W., and Onjane. W., Minors | ) ) ) | Appeal from the Circuit Court of Peoria County |
| (The People of the State of Illinois,       Petitioner-Appellee,       v. Cassandra R.,       Respondent-Appellant). | ) ) ) ) ) ) ) ) ) ) | Nos. 21JA353     21JA354     21JA355     21JA356 Honorable David A. Brown, Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices Steigmann and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*: The trial court's best-interest determination was not against the manifest weight of the evidence.

¶ 2     In February 2024, the State filed a petition to terminate the parental rights of respondent Cassandra R. as to her four minor children, Onjana. W. (born in 2014), Onjanet. W. (born in 2016), Onjani. W. (born in 2019), and Onjane. W. (born in 2020). The children's father is not a party to this appeal. In January 2025, the trial court granted the State's petition and terminated respondent's parental rights.

¶ 3     Respondent appeals, arguing the trial court's best-interest determination was against the manifest weight of the evidence. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5            In September 2021, the State filed petitions to adjudicate the children neglected under section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2020)), alleging that the children were in an environment injurious to their welfare. The State alleged (1) respondent and the children's father had previously been indicated by the Illinois Department of Children and Family Services (DCFS) for substantial risk of serious injury/environment injurious to health and welfare of the children, (2) respondent and the children's father were not cooperating with services, (3) the home was frequently dirty, (4) multiple instances of domestic violence occurred between respondent and the children's father when the children were present, and (5) the children's father had a criminal history, including selling drugs and keep drugs at the home.

¶ 6            Respondent stipulated that the State could prove the allegations in the petitions. In November 2021, the trial court adjudicated the children neglected, found respondent unfit, made the children wards of the court, and placed guardianship and custody of the children with DCFS.

¶ 7            In February 2024, the State filed a petition for termination of parental rights, alleging respondent was unfit under section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2022)) for failing to make reasonable progress toward the return of the children to her care during a nine-month period after the adjudication of neglect. The State alleged one nine-month period from January 5, 2023, to October 5, 2023.

¶ 8            In December 2024, the trial court held a fitness hearing and found respondent unfit by clear and convincing evidence, a finding not at issue on appeal.

¶ 9            On January 15, 2025, the trial court held a best-interest hearing. Abby Dennison, the current caseworker on the matter, submitted a best-interest report with two addenda and said

she would testify consistently with the documents. The court considered the report and addenda without objection to Dennison's statements contained in them.

¶ 10 Dennison reported that the two oldest children had been in their current placement since March 2023. The foster parents provided the children with stability, food, clothing, and shelter, and they also provided for the children's medical, educational, and mental-health needs. In particular, the foster parents noted mental-health concerns and ensured the children received necessary services. The children had strong bonds with their foster parents and referred to them as " 'mom' " and " 'dad.' " Both of the older children reported they considered their foster parents their true parents. The children had appropriate toys and clothing and were well groomed. The foster parents were willing to provide permanency through adoption.

¶ 11 Dennison reported the two younger children had been in their current placement since June 2022. The foster parent provided the children with stability, food, clothing, and shelter, and she also provided for their medical, educational, and mental-health needs. The children had a strong bond with their foster parent and referred to her as " 'mom.' " The children had appropriate toys and clothing and were well groomed. The foster parent was willing to provide permanency through adoption.

¶ 12 Dennison reported that respondent maintained a strong bond with her two youngest children, but the two oldest began reporting in September 2023 that they no longer wished to engage in parental visits. The children reported being scared, pressured into discussing their thoughts and feelings, having inappropriate case-related discussions brought on by respondent, and suffering ongoing and worsening mental-health concerns. Visitation was suspended, and the two older children had not attended visitation with respondent since September 2023.

¶ 13 As of July 2024, Dennison reported respondent continued to present domestic

violence concerns, had unstable housing, had unstable relationships, and was inconsistent with completing drug tests. Dennison provided detailed reports of multiple incidents of concern occurring between December 12, 2022, and January 5, 2024. Dennison recommend termination of respondent's parental rights.

¶ 14       In her December 4, 2024, addendum, Dennison reported the two older children recently described past incidents of physical and sexual abuse by their father that occurred when he was drunk and got in fights with respondent. These events resulted in a currently pending investigation involving respondent and the children's father. The two oldest children were receiving services or in the process of obtaining additional services related to sexual abuse.

¶ 15       Respondent testified she had a positive bond with all of her children but acknowledged she did not have visits with the two oldest children. She was living with her mother in Bloomington, who was critically ill. She worked at a truck stop and was able to support herself. Respondent was not aware of the sexual abuse allegations against the children's father until they recently reported it. She believed it was not in the children's best interest to terminate parental rights because she did "[m]ost of everything" that was asked of her and reported domestic violence when it happened. She had moved to Bloomington nine months prior and had not had problems with the children's father since then. She had an order of protection in place against him, but the children's father considered respondent's family his family and he "just pops up at anybody's house whenever he wants."

¶ 16       The children's guardian *ad litem* (GAL) reported that the two older children still wanted to remain in their current foster placement. The GAL did not inquire about the younger children's wishes because of their age. The two younger children were comfortable with the older children's foster parents. The foster parents for each set of children worked together to keep the

- 4 -

siblings unified. The GAL reported the children had very positive relationships with their foster parents.

¶ 17    The trial court addressed the statutory factors relevant to the best-interest determination and found that, while respondent had shown some recent stability regarding housing, income, and moving away from domestic violence, she had not shown she could keep the children safe from their father. Meanwhile, the children's needs were being met in foster care. The court noted the two oldest children had a strong bond with their foster parents and did not want to return to respondent, while the youngest two children had bonds with both the foster parent and respondent. The court found the only "close[ ]call" involved the two youngest children and ultimately found they needed stability and permanency. Thus, the court found it was in the best interest of the children to terminate parental rights.

¶ 18    This appeal followed.

¶ 19                                   II. ANALYSIS

¶ 20    On appeal, respondent argues the trial court erred in finding it was in the best interest of the children to terminate her parental rights. Respondent argues the court should have more strongly considered that she had stable housing, had a job, and could protect her children. She also argues the children could all live together in one home if returned to her.

¶ 21    Under section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West 2022)), the involuntary termination of parental rights is a two-step process. First, the State must prove by clear and convincing evidence the parent is "unfit," as defined in the Adoption Act. *In re Donald A.G.*, 221 Ill. 2d 234, 244 (2006). If the State proves unfitness, it then must prove by a preponderance of the evidence that termination of parental rights is in the best interest of the children. *In re D.T.*, 212 Ill. 2d 347, 363-66 (2004).

¶ 22 When a trial court finds a parent unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *Id.* at 352. "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *Id.* at 364. The State must prove by a preponderance of the evidence termination of parental rights is in the minor's best interest. *Id.* at 366. In making the best-interest determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2022)). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

"The court's best interest determination [need not] contain an explicit reference to each of these factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. On review, "[w]e will not disturb a court's finding that termination is in the [child's] best interest unless it was against the manifest

weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005). A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding, such that no reasonable person could arrive at the trial court's finding on the basis of the evidence in the record. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68.

¶ 23 Here, the evidence demonstrated the children had strong bonds with their foster families. The foster parents provided for the children's needs and provided safety and security. As the trial court noted, the provision of a safe environment was particularly important, given the numerous instances of domestic violence involving the children's father and recent reports of sexual abuse. While respondent testified that she had moved away from the children's father and had a stable job and housing, she also admitted that the children's father considered her family to be his own and "just pops up at anybody's house whenever he wants." She also did not provide additional details about her current housing and employment in regard to her ability to adequately care for four children. The court considered those matters and the evidence in relation to the statutory best-interest factors and found the factors weighed in favor of terminating respondent's parental rights. We cannot conclude the evidence in the record clearly calls for the opposite finding or is such that no reasonable person could find as the court found. Accordingly, the court's best-interest determination was not against the manifest weight of the evidence.

¶ 24                                    III. CONCLUSION

¶ 25           For the reasons stated, we affirm the trial court's judgment.

¶ 26           Affirmed.