NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 250225-U

NOS. 4-25-0225, 4-25-0226 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 30, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* X.B. and N.B.-B., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Sangamon County |
| Petitioner-Appellee, | ) | Nos. 23JA105 |
| v. | ) | 23JA197 |
| Shayla B., | ) | |
| Respondent-Appellant). | ) | Honorable |
| | ) | Karen S. Tharp, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Presiding Justice Harris and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's fitness and best-interest determinations were not against the manifest weight of the evidence.

¶ 2    In October 2024, the State filed motions to terminate the parental rights of respondent Shayla B. as to her minor children, X.B. (born in 2023) and N.B.-B. (born in 2021). The children's fathers are not parties to this appeal. In March 2025, the trial court granted the State's motions and terminated respondent's parental rights.

¶ 3    Respondent appeals, arguing the trial court's fitness and best-interest determinations were against the manifest weight of the evidence. We affirm.

¶ 4                    I. BACKGROUND

¶ 5    In May and October 2023, the State filed petitions to adjudicate the children neglected under section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705

ILCS 405/2-3(1)(b) (West 2022)), alleging that they were in an environment injurious to their welfare. Between the two petitions, the State alleged that (1) respondent had unresolved domestic violence issues, (2) respondent engaged in drug use, (3) the putative father of one of the children engaged in drug use, and (4) one of the children did not receive proper care and supervision necessary for her well-being.

¶ 6        In each case, respondent stipulated that the State could prove the allegations in the petitions. The trial court adjudicated the children neglected, found respondent unfit, made the children wards of the court, and placed guardianship and custody of the children with the Illinois Department of Children and Family Services.

¶ 7        On October 3, 2024, the State filed motions for termination of parental rights, alleging respondent was unfit under sections 1(D)(a), (b), (c), (g), (k), (m)(i), and (m)(ii) of the Adoption Act (750 ILCS 50/1(D)(a), (b), (c), (g), (k), (m)(i), (ii) (West 2024)) for (1) abandonment of the children; (2) failure to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare; (3) desertion of the children for more than three months preceding the commencement of the action; (4) failure to protect the children from conditions within their environment injurious to their welfare; (5) habitual drunkenness or addiction to drugs, other than those prescribed by a physician, for at least one year immediately prior to the commencement of the unfitness proceeding; (6) failure to make reasonable efforts to correct the conditions that were the basis for the removal of the children during a nine-month period after the adjudication of neglect; and (7) failure to make reasonable progress toward the return of the children to her care during a nine-month period after the adjudication of neglect. As to X.B., the State alleged a nine month period of December 13, 2023, to September 13, 2024. As to N.B.-B., the State alleged a nine-month period of August 23, 2023, to May 23, 2024.

¶ 8	On January 23, 2025, the trial court held a fitness hearing. Caseworker Darcy Garrett testified that the children originally came into care due to parental substance abuse, and there were additional untreated mental health and domestic violence issues in the home. Respondent's goals included addressing (1) visitation, (2) cooperation, (3) housing and income, (4) mental health services, (5) substance abuse services, (6) parenting, and (7) domestic violence.

¶ 9	Respondent was also required to participate in random drug testing. In October 2023, respondent tested positive for tetrahydrocannabinol (THC) and cocaine. In December 2023, respondent tested positive for THC, benzodiazepines, methamphetamines, and cocaine. In October 2024, she tested positive for THC, methamphetamines, and high levels of cocaine. Between November 8, 2023, and May 2, 2024, respondent failed to appear for 26 random tests. After that, she failed to appear for 13 more random tests.

¶ 10	Respondent initially was rated satisfactory on her service plan because she had been referred to initial services and had started to participate in them. Subsequently, however, respondent was generally rated unsatisfactory because she failed to engage in services. Respondent failed to complete the required substance abuse treatment and was unsuccessfully discharged from parenting classes after she stopped attending. Respondent also failed to engage in mental health services and was unsuccessfully discharged from domestic violence classes because she stopped attending. Garrett testified that respondent was not cooperative with services and did not consistently maintain employment. She also lived with and was supported by her paramour despite repeated instances of domestic violence. Garrett reviewed police reports that reflected ongoing domestic violence in the relationship and mentioned prostitution. Respondent sometimes stayed with her mother but was unable to continue to do so due to respondent's substance abuse.

¶ 11	Respondent engaged in 83 supervised visits with the children but missed 20.

Respondent asked to have the missed visits rescheduled. In August 2024, visitation was stopped because respondent exhibited a paranoid belief that one of the children was being sexually abused in foster care, and she needed to progress in substance abuse services before visitation could resume. Visitation resumed in November 2024. Respondent was never considered suitable for unsupervised visitation because of her lack of progress in services. Garrett testified respondent showed love and affection toward the children.

¶ 12 Respondent testified she had difficulty contacting Garrett, who did not answer her phone when respondent called. Respondent testified that she called Garrett when she could not attend visits and asked to reschedule, but she was told she could not do so. Respondent brought things such as food, formula, clothes, and gifts to the visits with the children. Respondent said she passed some drug tests and engaged in services on multiple occasions. However, she left inpatient substance abuse services because she was unable to sleep there. Respondent admitted she attempted outpatient services and relapsed. At the time of the hearing, she had been free of drugs for two days. Respondent was not currently taking prescribed medication for her mental health conditions because she did not like to take the medication when engaged in substance abuse. However, she was willing to start taking the medication and stop abusing drugs.

¶ 13 Respondent admitted she still lived with her paramour, explaining that she had nowhere else to go. Respondent testified that she wanted to enter a substance abuse treatment facility and then go to a shelter. She expressed a desire to "start over" and said she was willing to engage in services. Respondent said she loved her children and asked the trial court to give her another chance.

¶ 14 The trial court found that the State proved respondent unfit by clear and convincing evidence based on respondent's (1) failure to make reasonable efforts to correct the conditions that

were the basis for the removal of the children during a nine-month period after the adjudication of neglect; (2) failure to make reasonable progress toward the return of the children to her care during a nine-month period after the adjudication of neglect; (3) failure to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare; and (4) habitual drunkenness or addiction to drugs, other than those prescribed by a physician, for at least one year immediately prior to the commencement of the unfitness proceeding.

¶ 15　　On March 6, 2025, the trial court held the best-interest hearing. Garrett testified that the children had been in the same foster placement since the case was opened. The children were well cared for and happy. The children were bonded to their foster parent and called her "mama" and "mommy." The foster parent provided for the children's educational, medical, emotional, and other needs, and she had signed a permanency commitment to adopt the children. Garrett believed the foster parent would continue to allow respondent to have contact with the children but said "it hasn't been a discussion." To Garrett's knowledge, respondent still had not engaged in substance abuse services. Garrett believed it was in the best interest of the children to terminate respondent's parental rights.

¶ 16　　Respondent testified she reached out to Garrett for assistance with obtaining services and that Garrett was not helpful. She testified she tried to reach a service recommended by Garrett and the service did not respond. She no longer lived with her paramour and said she was currently homeless. However, she also said her paramour would probably let her sleep on his couch if she had nowhere to go. Respondent said she had "no stability right now" because no one was helping her. Respondent expressed a desire to enter a treatment program.

¶ 17　　The trial court found the State proved by a preponderance of the evidence it was in the best interest of the children to terminate respondent's parental rights. The court addressed the

required statutory best-interest factors, finding that they supported termination of parental rights. The court noted the children needed permanence, they were well cared for, and their placement provided them with security. The court expressed sympathy for respondent's struggles with drug addiction but noted her lack of progress in obtaining treatment and her willingness to return to her paramour's home. The court terminated respondent's parental rights and set the permanency goal for the children to adoption.

¶ 18        This appeal followed.

¶ 19                                II. ANALYSIS

¶ 20        On appeal, respondent argues the trial court erred in finding the State proved her unfit by clear and convincing evidence and that it was in the best interest of the children to terminate her parental rights.

¶ 21                            A. Fitness Determination

¶ 22        Under section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West 2024)), the involuntary termination of parental rights is a two-step process. First, the State must prove by clear and convincing evidence the parent is "unfit," as defined in the Adoption Act. *In re Donald A.G.*, 221 Ill. 2d 234, 244 (2006). If the State proves unfitness, it then must prove by a preponderance of the evidence that termination of parental rights is in the best interest of the children. *In re D.T.*, 212 Ill. 2d 347, 363-66 (2004).

¶ 23        A determination of parental unfitness involves factual findings and credibility determinations that the trial court is in the best position to make because its "opportunity to view and evaluate the parties *** is superior." (Internal quotation marks omitted.) *In re M.I.*, 2016 IL 120232, ¶ 21. A trial court's finding of parental unfitness will not be reversed unless it is against the manifest weight of the evidence. *In re N.G.*, 2018 IL 121939, ¶ 29. A decision is against the

manifest weight of the evidence only when the opposite conclusion is clearly apparent. *Id.* "As the grounds for unfitness are independent, the trial court's judgment may be affirmed if the evidence supports the finding of unfitness on any one of the alleged statutory grounds." *In re H.D.*, 343 Ill. App. 3d 483, 493 (2003).

¶ 24 Among the grounds the trial court found for unfitness, the court found respondent failed to make reasonable progress toward the return of the children during any nine-month period following the adjudication of neglect. See 750 ILCS 50/1(D)(m)(ii) (West 2024). Illinois courts have defined "reasonable progress" as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046 (2007). This court has explained reasonable progress exists when a trial court "can conclude that *** the court, in the *near future*, will be able to order the child returned to parental custody." (Emphasis in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991). " 'Reasonable progress' is measured by an objective standard." *In re A.R.*, 2023 IL App (1st) 220700, ¶ 70.

¶ 25 Here, there was ample evidence respondent failed to make reasonable progress toward reunification. Respondent repeatedly failed to engage in services. While she attempted to begin services, she never completed them. She also engaged in a pattern of behavior in which she continued her relationship with her paramour, despite repeated instances of domestic violence. Respondent failed to show progress in obtaining suitable housing and maintaining employment, failed drug tests, and had visitation suspended. Given respondent's lack of progress on nearly all of her goals, the State showed respondent could not progress to a return of the children in the near future. Accordingly, the trial court's determination respondent failed to make reasonable progress toward the return of the children was not against the manifest weight of the evidence.

¶ 26 B. Best-Interest Determination

¶ 27     Respondent next contends the trial court's best-interest determination was in error, arguing that the court misapplied or disregarded some of the statutory factors.

¶ 28     When a trial court finds a parent unfit, "the court then determines whether it is in the best interests of the minor that parental rights be terminated." *D.T.*, 212 Ill. 2d at 352. "[A]t a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *Id.* at 364. The State must prove by a preponderance of the evidence termination of parental rights is in the minor's best interest. *Id.* at 366. In making the best-interest determination, the court must consider the factors set forth in section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2024)). These factors include:

> "(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's background and ties, including familial, cultural, and religious; (4) the child's sense of attachments, including love, security, familiarity, and continuity of affection, and the least-disruptive placement alternative; (5) the child's wishes; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parental figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the persons available to care for the child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-3(4.05) (West 2008)).

"The court's best interest determination [need not] contain an explicit reference to each of these

- 8 -

factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. On review, "[w]e will not disturb a court's finding that termination is in the [child's] best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005).

¶ 29 Here, the evidence demonstrated the children had strong bonds with their foster parent. The children needed permanence, and the foster parent provided for the children's needs and provided safety and security. While respondent testified that she wanted to seek treatment, the record shows she had repeatedly failed to do so and would be unable to care for the children. The trial court specifically referenced the statutory best-interest factors and found that they weighed in favor of terminating respondent's parental rights. Respondent's arguments amount to contentions that the court's ruling goes against her wishes for the children. However, at the best-interest hearing, "the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *D.T.*, 212 Ill. 2d at 364. Once the court found respondent unfit, all considerations necessarily yielded to the best interest of the children and their interest in a stable, loving, and safe home environment. *Id.* We conclude that the court did not disregard or misapply the statutory factors.

¶ 30 Given the evidence that respondent was unable to provide for the children's needs, we cannot conclude the evidence in the record "clearly calls for the opposite finding" or is such that "no reasonable person" could find as the trial court found. (Internal quotation marks omitted.) *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68. Accordingly, the court's best-interest determination was not against the manifest weight of the evidence.

¶ 31 III. CONCLUSION

¶ 32 For the reasons stated, we affirm the trial court's judgment.

¶ 33        Affirmed.