NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 251027-U

NO. 4-25-1027

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 19, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* K.D., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Greene County |
| Petitioner-Appellee, | ) | No. 21JA2 |
| v. | ) | |
| Heather M., | ) | Honorable |
| Respondent-Appellant). | ) | Zachary A. Schmidt, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's fitness and best-interest determinations were not against the manifest weight of the evidence.

¶ 2    In September 2024, the State filed a petition to terminate the parental rights of respondent Heather M. as to her minor child, K.D. (born in 2014). K.D.'s father is not a party to this appeal. In June 2025, the trial court granted the State's petition and terminated respondent's parental rights. Respondent appeals, arguing that the trial court's fitness and best-interest determinations were against the manifest weight of the evidence. We affirm.

¶ 3                              I. BACKGROUND

¶ 4    In January 2021, the State filed a petition to adjudicate K.D. neglected under section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2020)), alleging that K.D. was in an environment injurious to her welfare because of

methamphetamine use in respondent's household. A separate petition was later filed concerning K.D.'s sibling, J.G. (born in 2008), who is not a subject of this appeal. In November 2021, following several continuances and before the adjudicatory hearing on the matter, the State filed an amended petition under section 2-4(1)(c) of the Juvenile Court Act (*id.* § 2-4(1)(c)), alleging that K.D. was dependent because she was under 18 years of age and without proper medical or other care necessary for her well-being through no fault, neglect, or lack of concern by her guardian.

¶ 5 In November 2021, the trial court adjudicated K.D. dependent and, in January 2022, found respondent unfit. The court made K.D. a ward of the court and placed guardianship and custody with the Illinois Department of Children and Family Services (DCFS).

¶ 6 In September 2024, the State filed a petition for termination of parental rights, alleging respondent was unfit under section 1(D)(b), (m)(i), and (m)(ii) of the Adoption Act (750 ILCS 50/1(D)(b), (m)(i), (ii) (West 2024)) for failing to (1) maintain a reasonable degree of interest, concern, or responsibility as to K.D.'s welfare; (2) make reasonable efforts to correct the conditions that were the basis for the removal of K.D. during a nine-month period after the adjudication of neglect; and (3) make reasonable progress toward the return of K.D. to respondent's care during a nine-month period after the adjudication of neglect. The State originally alleged a nine-month period ending on April 28, 2024. In March 2025, the State filed an amended petition changing the nine-month period to April 1, 2024, to December 31, 2024.

¶ 7 In May 2025, the trial court held a fitness hearing. Caseworker Tabitha Evans testified she was assigned to the case from October 2023 to June 2024. Evans identified a December 2023 service plan that was in effect during the time she was assigned to the case. The plan was admitted into evidence without objection.

¶ 8        The service plan stated that DCFS opened the case because of methamphetamine use by respondent and others in respondent's home while K.D. was present. The primary risk factors that led to K.D.'s removal included respondent's methamphetamine use and her inability to protect or care for K.D. Shortly after the case was initiated, respondent failed to appear for a drug test. Caseworkers followed up to determine why respondent failed to appear, and respondent stated that she did not have transportation. The plan included requirements that respondent (1) cooperate with DCFS and any court orders regarding services, (2) complete a substance-abuse assessment and cooperate with random drug testing, (3) participate in scheduled supervised visits with K.D., and (4) complete a mental-health assessment and cooperate with any recommendations.

¶ 9        Evans testified respondent did not comply with the service plan. Evans had sporadic contact with respondent, and respondent was not making any efforts or progress regarding communication with DCFS. Respondent also failed to make efforts to participate in supervised visitation. Instead, respondent told Evans that she preferred to visit K.D. at her convenience and did not want the agency supervising her. Respondent also failed to complete substance-abuse or mental-health assessments.

¶ 10        Evans testified it was possible respondent could have indicated a financial inability to arrange for transportation. However, Evans did not recall respondent making such a claim and, to her knowledge, respondent had not requested any services or assistance with transportation. Evans did not know if respondent had a vehicle or a driver's license, but she had previously observed several vehicles at respondent's home. Evans opined that respondent failed to make reasonable efforts or progress during her tenure assigned to the case.

¶ 11        Caseworker Rebecca Depping testified she was assigned the case from June 2024 through the date of the hearing. She identified a service plan established in June 2024, which was

admitted into evidence without objection. The June 2024 service plan contained the same requirements as the December 2023 service plan. In summarizing respondent's progress, the plan noted that Evans had been unsuccessful in contacting respondent. The overall progress evaluation under the plan was unsatisfactory.

¶ 12 Depping testified that respondent made no efforts to communicate with her. Depping arranged weekly two-hour visits, but respondent's participation was inconsistent. Respondent's visits with K.D. were usually during holidays and unsupervised, arranged through the foster mother, K.D.'s aunt. However, respondent's unsupervised visits were not consistent enough to demonstrate progress.

¶ 13 Depping testified respondent had yet to complete substance-abuse and mental-health assessments or treatment. Respondent complied with random drug tests only when she appeared in court, and she failed to maintain her sobriety. Depping attempted to contact respondent monthly by phone but did not know if respondent had a functioning phone. She attempted to visit in person once, but respondent was not at home. Depping spoke to respondent in August 2024 about transportation to obtain a substance-abuse evaluation and any help she might need with services. Depping said respondent told her she had transportation. However, Depping testified that, at one point, respondent told her that she was without transportation for one month. Depping opined that respondent did not make any reasonable efforts or reasonable progress in correcting the conditions that led to K.D.'s removal.

¶ 14 Respondent testified she was currently homeless but had been staying at several locations. She stated she was not aware Evans was assigned to her case until she received notice from her attorney. Respondent said she had a functioning cell phone and she reached out to Evans several days in a row but got no response back. Otherwise, her contact with Evans occurred

primarily when respondent came to court. Respondent admitted she did not complete substance-abuse or mental-health evaluations while Evans was her caseworker. Respondent testified she had problems with transportation "quite a bit." She did not have her own vehicle. She had a valid driver's license and sometimes used a friend's car, but she did not have anything dependable. Respondent never asked Evans for financial assistance or assistance with transportation. She had asked for assistance earlier in the case, but it was not provided, so she stopped asking for help.

¶ 15    Respondent testified that she had a working phone while Depping was the caseworker. She said that Depping never contacted her, and she denied speaking to Depping in August 2024. Respondent admitted she was told that she needed a substance-abuse evaluation and was told she could choose a location, but she did not reach out to Depping to find an acceptable facility. Respondent stated she was unable to participate in substance-abuse and mental-health assessments because she had transportation issues and lacked financial resources because she was unemployed. Respondent admitted on cross-examination that she received rides from other people to visit K.D. and to attend her court hearings. When asked what efforts she made to resolve transportation issues regarding the substance-abuse and mental-health assessments, respondent said, "Um, nothin."

¶ 16    The trial court found that the State proved respondent unfit by clear and convincing evidence based on respondent's failure to make reasonable (1) efforts to correct the conditions that were the basis for the removal of K.D. during a nine-month period after the adjudication of neglect and (2) progress toward the return of K.D. to respondent's care during a nine-month period after the adjudication of neglect. The court found the testimony was unrefuted that respondent did not complete substance-abuse or mental-health assessments, her visitation was somewhat sporadic, and she had limited to no contact with DCFS.

¶ 17          The trial court noted respondent admitted she had a phone that was in working order and she managed to obtain transportation to court, but she made no efforts to obtain rides to or from either mental-health or substance-abuse evaluations. The court observed respondent further admitted that she never requested assistance from Evans. Although respondent disputed that she was ever told about assistance from Depping, the court found that claim self-serving and noted respondent had made multiple appearances in court without ever raising issues with transportation.

¶ 18          In June 2025, the trial court held the best-interest hearing. Depping testified K.D. had been placed with her parental aunt, Kimberly D., since 2021 and was doing well there. J.G. was close to turning 18 years of age and lived at another location. Kimberly lived in a two-story home, and K.D. had her own bedroom and everything she needed, such as clothing and food. K.D.'s medical and educational needs were also being met. K.D. was doing well in school and felt comfortable in Kimberly's home. Depping testified K.D. showed a bond with Kimberly and with Kimberly's three children, who lived in the house. Kimberly showed affection toward K.D. and gave positive feedback to her. Kimberly had expressed a willingness to adopt K.D.

¶ 19          Depping testified respondent had not provided for K.D.'s needs and had not engaged in supervised visits with K.D. Depping said K.D. reported to her that K.D. saw respondent at a store or gas station recently, but respondent did not speak to her. Depping stated that Kimberly's home was stable, and she believed the current placement was in K.D.'s best interest.

¶ 20          Respondent testified that she was currently homeless and unemployed. She said she had at least 12 visits with K.D. during the past year that she had arranged herself through Kimberly. Respondent said that, when K.D. saw her at a store, they had ridden bicycles there together. Respondent testified she had a very close relationship with K.D. and believed it was not in K.D.'s best interest to terminate her parental rights. Respondent agreed K.D. was comfortable in

- 6 -

Kimberly's house, that Kimberly provided for K.D.'s medical and educational needs, and that Kimberly had a bond with K.D. Respondent also agreed that K.D. had a bond with Kimberly's children and felt safe in Kimberly's home. However, respondent stated K.D. did not have her own bedroom at Kimberly's house and instead shared a room with Kimberly's daughter.

¶ 21 The trial court found the State proved by a preponderance of the evidence that it was in the best interest of K.D. to terminate respondent's parental rights. The court addressed the required statutory best-interest factors, finding they supported termination of parental rights. The court noted K.D. needed permanence, was well cared for, and her placement provided her with a safe and stable home. Further, Kimberly had engaged in contact with respondent, which showed she believed in facilitating family ties. Moreover, while there was a relationship between K.D. and respondent, this did not show that respondent could provide for K.D.'s needs.

¶ 22 The trial court terminated respondent's parental rights. Respondent filed a motion to reconsider, which the court denied. This appeal followed.

¶ 23 II. ANALYSIS

¶ 24 On appeal, respondent argues the trial court erred in finding the State proved her unfit by clear and convincing evidence and that termination of her parental rights was in K.D.'s best interest.

¶ 25 A. Fitness Determination

¶ 26 Under section 2-29(2) of the Juvenile Court Act (705 ILCS 405/2-29(2) (West 2024)), the involuntary termination of parental rights is a two-step process. First, the State must prove by clear and convincing evidence that the parent is "unfit," as defined in the Adoption Act. *In re Donald A.G.*, 221 Ill. 2d 234, 244 (2006). If the State proves unfitness, it then must prove by a preponderance of the evidence that termination of parental rights is in the best interest of the

child. *In re D.T.*, 212 Ill. 2d 347, 363-66 (2004).

¶ 27    A determination of parental unfitness involves factual findings and credibility determinations that the trial court is in the best position to make because its "opportunity to view and evaluate the parties *** is superior." (Internal quotation marks omitted.) *In re M.I.*, 2016 IL 120232, ¶ 21. A trial court's finding of parental unfitness will not be reversed unless it is against the manifest weight of the evidence. *In re N.G.*, 2018 IL 121939, ¶ 29. A decision is against the manifest weight of the evidence only when the opposite conclusion is clearly apparent. *Id.* "As the grounds for unfitness are independent, the trial court's judgment may be affirmed if the evidence supports the finding of unfitness on any one of the alleged statutory grounds." *In re H.D.*, 343 Ill. App. 3d 483, 493 (2003).

¶ 28    Here, among the grounds the trial court found for unfitness, the court found respondent failed to make reasonable efforts to correct the conditions that were the basis for the removal of K.D. during a nine-month period after the adjudication of neglect. See 750 ILCS 50/1(D)(m)(i) (West 2024). We note respondent does not meaningfully challenge that finding on appeal and instead focuses on the court's finding that she also failed to make reasonable progress toward the return of K.D. to her care during the relevant time period.

¶ 29    Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) requires the argument section of an appellant's brief to include "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on. *** Points not argued are forfeited." "Mere contentions, without argument or citation to authority, do not merit consideration on appeal." (Internal quotation marks omitted.) *Vance v. Joyner*, 2019 IL App (4th) 190136, ¶ 80. Because respondent does not specifically address the trial court's unfitness finding under section 1(D)(m)(i) of the Adoption Act, she has forfeited any argument challenging that finding. Because

the grounds for unfitness are independent and the court's judgment may be affirmed if the evidence supports the finding of unfitness on any one of the alleged statutory grounds, we may affirm solely based on the court's determination of unfitness under section 1(D)(m)(i).

¶ 30 Even absent forfeiture, we find the trial court also did not abuse its discretion in finding respondent unfit on the basis that she failed to make reasonable progress toward the return of K.D. to her care during any nine-month period following the adjudication of neglect. See 750 ILCS 50/1(D)(m)(ii) (West 2024). Illinois courts have defined "reasonable progress" as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046 (2007). This court has explained that reasonable progress exists when a trial court "can conclude that *** the court, in the *near future*, will be able to order the child returned to parental custody." (Emphasis in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991). " 'Reasonable progress' is measured by an objective standard." *In re A.R.*, 2023 IL App (1st) 220700, ¶ 70.

¶ 31 Here, there was ample evidence respondent failed to make reasonable progress toward reunification. Respondent repeatedly failed to engage in services. While she claimed her caseworkers did not contact her and that she encountered transportation issues, the trial court noted she was able to appear for court and never brought these alleged issues to the court's attention. Respondent also admitted that she did not ask for assistance. Respondent did not take part in required drug testing except when she came to court, and she failed to maintain sobriety. While respondent engaged in some visits with K.D. outside of DCFS intervention, she did not attend her scheduled visits. Given respondent's lack of progress on all of her goals, the State showed respondent could not progress to a return of K.D. in the near future. Accordingly, the court's determination respondent failed to make reasonable progress toward the return of K.D. was not

against the manifest weight of the evidence.

¶ 32                                    B. Best-Interest Determination

¶ 33         Respondent next contends the trial court's best-interest determination was against

the manifest weight of the evidence.

¶ 34         When a trial court finds a parent unfit, "the court then determines whether it is in

the best interests of the minor that parental rights be terminated." *D.T.*, 212 Ill. 2d at 352. "[A]t a

best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield

to the child's interest in a stable, loving home life." *Id.* at 364. The State must prove by a

preponderance of the evidence termination of parental rights is in the minor's best interest. *Id.* at

366. In making the best-interest determination, the court must consider the factors set forth in

section 1-3(4.05) of the Juvenile Court Act (705 ILCS 405/1-3(4.05) (West 2024)). These factors

include:

> "(1) the child's physical safety and welfare; (2) the development of the child's
>
> identity; (3) the child's background and ties, including familial, cultural, and
>
> religious; (4) the child's sense of attachments, including love, security, familiarity,
>
> and continuity of affection, and the least-disruptive placement alternative; (5) the
>
> child's wishes; (6) the child's community ties; (7) the child's need for permanence,
>
> including the need for stability and continuity of relationships with parental figures
>
> and siblings; (8) the uniqueness of every family and child; (9) the risks related to
>
> substitute care; and (10) the preferences of the persons available to care for the
>
> child." *In re Jay. H.*, 395 Ill. App. 3d 1063, 1071 (2009) (citing 705 ILCS 405/1-
>
> 3(4.05) (West 2008)).

"The court's best interest determination [need not] contain an explicit reference to each of these

- 10 -

factors, and a reviewing court need not rely on any basis used by the trial court below in affirming its decision." *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 19. On review, "[w]e will not disturb a court's finding that termination is in the [child's] best interest unless it was against the manifest weight of the evidence." *In re T.A.*, 359 Ill. App. 3d 953, 961 (2005).

¶ 35    Here, the evidence demonstrated K.D. was bonded with Kimberly and her children. K.D. needed permanence, and Kimberly provided for her needs and provided safety and security. While respondent testified that she disagreed it would be in K.D.'s best interest to terminate parental rights, the record shows she would be unable to care for K.D. Respondent focuses on factors the trial court did not explicitly mention or the State did not provide proof of, such as information about K.D.'s wishes and goals concerning respondent. However, as previously noted, the court was not required to explicitly reference each factor.

¶ 36    Given the evidence that respondent was unable to provide for K.D.'s needs, while Kimberly provided a safe and stable home, we cannot conclude the evidence in the record "clearly calls for the opposite finding" or is such that "no reasonable person" could find as the trial court found. (Internal quotation marks omitted.) *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68. Accordingly, the court's best-interest determination was supported by the weight of the evidence.

¶ 37    III. CONCLUSION

¶ 38    For the reasons stated, we affirm the trial court's judgment. In closing, we thank appointed counsel for his representation of respondent, but we remind him to take care to follow the dictates of Illinois Supreme Court Rule 341 in briefing. See Ill. S. Ct. R. 341 (eff. Oct. 1, 2020) (requiring a table of contents, including points and authorities, with page numbers therein and a complete statement of facts).

¶ 39    Affirmed.